560 F.2d 797
 PEABODY COAL COMPANY and Old Republic Companies, Petitioners,
v.
BENEFITS REVIEW BOARD, United States Department of Labor,
Washington D. C., and Director, Office of Workers'
Compensation Programs, United States
Department of Labor, Respondents.
 No. 76-2191.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 7, 1977.
Decided Aug. 16, 1977.
 
 John L. Kilcullen, Washington, D. C., for petitioners.
 Ronald E. Meisburg, U. S. Dept. of Labor, Washington, D. C., for respondents.
 
 
 1
 Before SWYGERT and BAUER, Circuit Judges, and MARSHALL, District Judge.[1]
 
 
 2
 MARSHALL, District Judge.
 
 
 3
 The issue raised by this petition for review is whether the decision of the Benefits Review Board, affirming an award of benefits to a coal miner under the Federal Coal Mine Health and Safety Act of 1969, as amended by the Black Lung Benefits Act of 1972, 30 U.S.C. § 901, et seq. (1970 ed. & Supp. V, 1975), was supported by substantial evidence in the record as a whole and is in accord with the law. The petition is here pursuant to 30 U.S.C. §§ 925, 932, incorporating and adopting 33 U.S.C. § 921(c) (Supp. V, 1975); Director, OWCP v. Peabody Coal Co. and Director, OWCP v. Southwestern Illinois Coal Co., 554 F.2d 310 (7th Cir. 1977).
 
 
 4
 The claimant, Charles W. Wells, worked in and around various coal mines from approximately 1936 until September, 1973, when he left work because of heart trouble. He was admitted to a hospital for tests and for open heart surgery in September of 1973. He never returned to work, and formally quit his mining job in March of 1974. The claimant suffered exposure to coal and mining operations dust on all of his mining jobs. He applied for black lung benefits on December 1, 1973. After an administrative hearing, the Department of Labor hearing officer awarded the claimant black lung benefits, payable by the Department from December 1, 1973, and thereafter by the Peabody Coal Company and Old Republic Insurance Companies, the responsible operator and the insurer. The Benefits Review Board affirmed the benefit award as supported by substantial evidence, as not irrational, and as in accordance with the law. The operator and the insurer petition for review. The same standard directs our review here. 30 U.S.C. § 923(b), incorporating by reference 42 U.S.C. § 405(g); Henson v. Weinberger, 548 F.2d 695 (7th Cir. 1977).
 
 
 5
 Petitioners originally questioned the Board's jurisdiction and the hearing officer's qualifications, but agreed in their reply brief that these issues were resolved by our recent decision in two consolidated cases, Director, OWCP v. Peabody Coal Co., and Director, OWCP v. Southwestern Illinois Coal Co., supra.
 
 
 6
 I. The Claimant's Employment and Medical Histories
 
 
 7
 The claimant began his mining work in 1936 by hand loading coal underground in small "slope" mines. In 1942 he left the mines and worked for a time as a welder and a farm worker. In 1945 he returned to mining as an underground shuttle car operator and later as a driller. He again left the mines in 1951 and worked in construction as a welder for the Atomic Energy Commission. He returned to mining in 1953, and from then until 1969 he did welding. As a mine welder, they worked "by the tipple, in the pit, and wherever else he was needed but, primarily, his work was performed in an enclosed shop located some distance from the tipple." Decision and Order of Hearing Officer, App. 23. From 1969 until he stopped working in 1973, claimant was a coal truck driver.
 
 
 8
 Regarding the conditions of his first mining job, the claimant testified that he loaded coal right after it had been struck off the face of the vein, that the coal was unwashed, and that it was very dusty work. T. 26-27. His subsequent work as a shuttle car operator was also very dusty, taking him back and forth from the face of the vein to the loader head. T. 35-37. As a driller, he worked right at the face of the vein, again in very dusty conditions. T. 39-40. He had a respirator, but it did not effectively keep out the coal dust. T. 43. His first assignment as a mine welder in 1953 subjected him to a lot of coal dust, particularly in and around the coal driers. T. 46-47. After 18 months he was moved to the shop, which was about 400 feet from the tipple, or where the coal cars were unloaded by dumping them. This job was dusty, especially if the wind blew from the direction in which the trucks were dumping the coal. T. 47, 49. Finally, as a coal truck driver, the claimant picked up coal in the pit, sitting in the truck's cab while it was loaded, and then drove to the hopper to dump the coal. T. 51-53. When it was not raining, the claimant was exposed to a lot of coal dust on this job, especially while waiting in line to load or to dump. T. 53-55.
 
 
 9
 Claimant first experienced trouble breathing around 1969 or 1970 when he quit the mine welding job and became a coal truck driver. T. 56, 67, 86-87. He did not consult a physician, although earlier in 1948 a doctor had told him he had a spot on his lung and that he should work in less dusty conditions. Decision, supra, App. 24. His breathing impairment is now so severe that the claimant is short of breath after walking one-half block, or up a few stairs, and also after bending. He cannot carry even rather light objects, and occasionally awakes during the night unable to breathe. Formerly he coughed up a black sputum.
 
 
 10
 The hearing officer found the medical evidence conflicting. An August 1974 X-ray report by Dr. Browning found small rounded opacities in five of the claimant's six lung zones, which under the International Classification System, denotes Category 1 pneumoconiosis. In contrast, a March 1975 X-ray report by Dr. Davis, a doctor employed by the operator/carrier, states that "there is not definite evidence of nodulation or consolidation such as is seen in pneumoconiosis." Thus Dr. Davis concluded that the claimant was not disabled from a pulmonary standpoint. He further commented that claimant's "work history does not support adequate exposure to dust to cause a pneumoconiosis." Finally, a June 1974 X-ray report by Dr. Judson says that claimant's lung fields are clear. This report derives from a post-operative evaluation of claimant's heart condition, rather than from a specific test for pneumoconiosis. Decision, supra, App. 24.
 
 
 11
 The claimant also submitted to two sets of pulmonary function tests, the first in May of 1974 and the second in March of 1975. Both reveal pulmonary impairment amounting to a total disability. Dr. Davis, who conducted the 1975 tests, noted the abnormal results and attributed them to claimant's cardiovascular disease. Id. at App. 25.
 
 
 12
 Based upon this evidence, the hearing officer awarded the claimant black lung benefits, and the Benefits Review Board affirmed, over one dissent.
 
 II. The Merits
 
 13
 The petitioners contend that the record lacks substantial evidence to support a finding that the primary cause of claimant's totally disabling respiratory impairment is pneumoconiosis rather than his heart ailment.
 
 
 14
 A claimant may establish his entitlement to black lung benefits in either of two ways. First, he can demonstrate that he is totally disabled by pneumoconiosis in accordance with the regulatory standards promulgated by the Secretary pursuant to his authority under the Act. 30 U.S.C. §§ 921(a), (b), 932(h); 20 C.F.R. §§ 410.422, 410.424, 410.426. Alternatively, the claimant may invoke the rebuttable presumption of total disability due to pneumoconiosis which is provided in the statute, 30 U.S.C. § 921(c)(4). The decision and order of the hearing officer were based upon the regulations.[2]
 
 
 15
 Under the regulations, the hearing officer must determine that the miner is afflicted with pneumoconiosis, that the pneumoconiosis arose from his mining employment, that the miner is totally disabled, and that the reason for his total disability is his pneumoconiosis. The hearing officer found that the claimant has pneumoconiosis, based upon the X-ray report of Dr. Browning indicating the existence of Category 1 pneumoconiosis. This Category 1 diagnosis meets the regulatory standards for the existence of the disease. Employing the presumption outlined in 30 U.S.C. § 921(c)(1),[3] the officer then found that the claimant's pneumoconiosis was causally related to his mining employment. Next, considering the results of the two pulmonary function studies, the officer found that the claimant was totally disabled by his respiratory disease. Finally, he concluded that the evidence warranted the inference that "pneumoconiosis is the operative cause, in whole or in part, of Claimant's totally disabling respiratory condition."
 
 
 16
 Petitioners contend that the hearing officer did not find the pneumoconiosis was in fact the primary cause of the claimant's total disability, as required by the regulations. Further, they argue that the record lacks substantial evidence to support such a finding, if one was made. The first argument raises the question of whether the hearing officer's decision must at least implicitly include a finding that pneumoconiosis is the primary cause of the claimant's disabling respiratory ailment. We believe that it must. The regulations specifically direct the fact finder to determine that a miner is under a disability "only if his pneumoconiosis is . . . the primary reason for his inability to engage in . . . comparable and gainful work. Medical impairments other than pneumoconiosis may not be considered." 20 C.F.R. § 410.426.
 
 
 17
 According to the American Heritage Dictionary 1039 (1969), a primary reason is one which is first in degree or importance, or one which is fundamental or basic.[4] Thus, in the event that a claimant's respiratory ailment has multiple causes, the hearing officer must determine that pneumoconiosis is the most important or fundamental cause of the impairment. On this point, the hearing officer said only that the "inference is warranted that pneumoconiosis is the operative cause, in whole or in part, of the claimant's totally disabling respiratory condition." Hence, we must determine whether this statement is the equivalent of a finding that pneumoconiosis is the "primary reason" for the claimant's total disability.
 
 
 18
 The word operative refers to something which is in force or in effect; the word makes no reference to the strength or the importance of the effect. American Heritage Dictionary 921 (1969). Consequently, if the hearing officer had only characterized the claimant's pneumoconiosis as "operative in part," we would seriously question whether this finding was sufficient to conform to the regulations. In contrast, however, the hearing officer said that pneumoconiosis was the operative cause "in whole or in part" of the claimant's total disability. His use of the word "part" must be considered in this context, following as it does so closely upon the word "whole." This choice of words suggests that the hearing officer found that the claimant's disability could be attributed entirely to pneumoconiosis, but that he was not absolutely certain that pneumoconiosis was the only medical factor involved. Hence, to be fair, he qualified his statement. Viewed in this light, the use of the phrase "in whole or in part" indicates that the officer intended to say that if pneumoconiosis was not in fact the sole cause, it was, at the very least, the major cause of the claimant's impairment. We therefore conclude that the hearing officer's finding satisfies the regulatory requirement that pneumoconiosis is the primary reason for the miner's total disability.
 
 
 19
 Admittedly, our task on review would be less problematic if the hearing officer had adopted the wording of the regulations. But as drafted, § 410.426 does not oblige the hearing officer to use the precise terminology of the regulations, and in the absence of some authority to this effect, we decline to impose this rigid a burden upon the fact finder. As long as the decision contains a finding which is equivalent to a conclusion that pneumoconiosis is the primary reason for the disability, the decision complies with the regulations.
 
 
 20
 The remaining issue is whether the record contains substantial evidence to support the finding that pneumoconiosis and not heart trouble was the primary cause of the claimant's totally disabling respiratory ailment.
 
 
 21
 The substantial evidence test is less rigorous than the burden of proof in a jury trial. Young & Co. v. Shea, 404 F.2d 1059, 1061 (5th Cir. 1968), cert. denied, 395 U.S. 920, 89 S.Ct. 1771, 23 L.Ed.2d 237 (1969). In reviewing the findings of the trier of fact, the court cannot reweigh the evidence, but may only inquire into the existence of evidence to support the findings. South Chicago Coal & Dock Co. v. Bassett, 104 F.2d 522, 528 (7th Cir. 1939), aff'd, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732 (1940). Thus, the reviewing court may not set aside an inference because it finds the opposite one more reasonable, or because it questions its factual basis. Cardillo v. Liberty Mut. Ins. Co., 330 U.S. 469, 477-78, 67 S.Ct. 801, 91 L.Ed. 1028 (1947). The evaluation of the witnesses' credibility, including that of medical witnesses, is for the trier of fact. John W. McGrath Corp. v. Hughes, 289 F.2d 403, 405 (2d Cir. 1961). Moreover, the trier is not bound to accept the opinion or theory of any given medical officer, but may weigh the medical evidence and draw his own inferences. Todd Shipyards Corp. v. Donovan, 300 F.2d 741 (5th Cir. 1962).
 
 
 22
 With these standards in mind, we conclude that the hearing officer's decision is supported by substantial evidence. He was presented with several items of evidence linking the claimant's pulmonary difficulties to heart trouble, and accordingly found that the claimant was totally disabled by his heart condition. Nonetheless, he further determined that the claimant's pneumoconiosis was also totally disabling. In drawing this conclusion, the hearing officer relied heavily upon the results of the claimant's two sets of pulmonary functions studies, which demonstrated a total respiratory impairment. The hearing officer acknowledged that Dr. Davis characterized the abnormal results as "probably due to his cardiovascular disease," but for two reasons he discredited the doctor's observation. First, the doctor's determination was qualified rather than certain. Second, the conclusion was based in part upon what the hearing officer described as the doctor's erroneous evaluation of the claimant's exposure to coal dust.[5] Dr. Davis felt that the claimant's work history did not suggest adequate exposure to coal dust to induce pneumoconiosis. On the contrary, the hearing officer found that the claimant's long years of mining work, consisting of both underground work and surface work in conditions comparable to those underground, included ample exposure to coal dust. In his view, this employment history clearly justified attributing the abnormal pulmonary results to pneumoconiosis.
 
 
 23
 Moreover, the trier of fact concluded that the pulmonary test results corroborated the claimant's credible testimony that he had suffered shortness of breath and its attendant physical limitations for some years before the onset of his heart trouble. Consequently, the hearing officer decided to accept the pulmonary results "at their face value" and determined that the claimant was totally disabled by pneumoconiosis.[6] This process of crediting and discrediting the evidence, and drawing inferences from the credited evidence, is properly within the fact finder's competence. As noted above, the trier of fact is not bound to accept any particular physician's diagnosis, but is free to draw his own inferences from the medical testimony. The record here would have supported a decision disallowing the claim for benefits,[7] but it also contains substantial evidence to support the award. Although the reviewing court might have drawn different inferences, the award must be affirmed if the fact finder's inferences are based upon substantial evidence. Congress does not permit us to substitute our judgment for that of the trier of fact, who heard the testimony and observed the witnesses' demeanor.
 
 
 24
 Therefore, the decision of the Benefits Review Board is affirmed as supported by substantial evidence and as in accordance with the law.
 
 
 25
 SWYGERT, Circuit Judge, dissenting.
 
 
 26
 As the majority acknowledges, this court's standard of review of the hearing officer's decision is identical with the standard which controls the Benefits Review Board: the decision must be supported by substantial evidence, not irrational, and in accordance with law. The record convinces me that the hearing officer's decision lacks support of substantial evidence. Even the Benefits Review Board demurred when applying the substantiality test. Rather than making an affirmative finding, it stated ambiguously, "The Board cannot say that the hearing officer's conclusion that the claimant is totally disabled by pneumoconiosis is not supported by substantial evidence, is irrational or is not in accordance with law." (Emphasis added.) Unfortunately, the majority seems to have no difficulty determining in positive terms that the decision meets the test. Nonetheless, even if substantial evidence could be said to exist, the decision would, in my opinion, be irrational and not in accordance with law.
 
 
 27
 Black lung benefits may be awarded only when the "primary" cause of a claimant's total disability is pneumoconiosis, a chronic dust disease arising out of employment in a coal mine. 30 U.S.C. § 902, 20 C.F.R. § 410.426(a).[1] In the case at bar the evidence establishes that the actual cause of the claimant's inability to continue his employment was coronary artery disease. He worked continuously until he had a coronary attack in August 1973. He quit work on September 1, 1973, and had open heart surgery three weeks later. At the hearing on his claim, he testified that he was forced to quit work because of his heart condition,[2] and that his doctor told him after the operation that his working days were over.
 
 
 28
 Upon admission to the Indiana University Hospital on September 12, 1973, the claimant gave a medical history wherein he denied dyspnea, orthopnea, nocturnal dyspnea, syncope, or any other pulmonary problems.[3] He told the examining physician, Dr. Walter E. Judson, that he was in very good general health until May 1973 when he first experienced chest pains which led to the diagnosis of cardiac disease and which had been relieved by nitroglycerin. Chest X-rays before and after the heart surgery showed "the lung fields were clear." At a subsequent examination on March 13, 1975, by Dr. Martin W. Davis, an internist, the chest X-rays showed "no definite evidence of nodulation or consolidation such as seen in pneumoconiosis." Dr. Davis' report also stated: "his pulmonary function studies are abnormal but this is probably due to his cardiovascular disease. Actually, his pulmonary function is adequate to perform a job requiring moderate physical exertion." He ended his report by stating:
 
 
 29
 It is my opinion that Mr. Charles Wells is not disabled from a pulmonary standpoint. I do not believe that he has any definite evidence of pneumoconiosis. I believe that he is permanently partially disabled as a result of cardiovascular disease, not related to his occupation.
 
 
 30
 Opposed to this strong evidence is an interpretation by Dr. R. H. Browning of an X-ray examination made in January 1974. Dr. Browning found a number of small opacities in claimant's lungs which were classified "Category 1" in the medical classification of pneumoconiosis. The opacities were "some small rounded opacities of the smallest size (type p), and the lowest profusion level (1/1), under the Internal Classification system (UICC)." Further there was admitted into evidence a pulmonary function study taken while claimant was recuperating from his heart surgery which showed values below the table of values in 20 C.F.R. § 410.426. This was the extent of the medical evidence on which the hearing officer found that the claimant was afflicted with pneumoconiosis. The hearing officer also referred to claimant's own description of his condition and of his "ample exposure to coal dust."
 
 
 31
 After first concluding that claimant's heart condition was a cause of his total disability, the hearing officer determined claimant's lung condition also resulted in his total disability to engage in any gainful work. The hearing officer reasoned:
 
 
 32
 The record evidence amply demonstrates that Claimant is unable to engage in gainful work comparable to that involved in his previous vocation as a result of a totally disabling heart condition. However, this determination does not answer the critical question before me, namely, whether or not he is totally disabled by reason of his pneumoconiosis. For the reasons stated below, I conclude that Claimant is so disabled.
 
 
 33
 The pulmonary function studies performed at Doctors Hospital, and those performed by Dr. Davis, meet the regulatory standards (20 CFR 410.426) for establishment of respiratory disability. The results of these studies are consistent with Claimant's credited testimony concerning his shortness of breath and the physical limitations caused by that condition. While Dr. Davis stated in his report that Claimant's abnormal pulmonary function studies are "probably due to his cardiovascular disease" (emphasis added), this qualified diagnosis is also based, at least in part, on the doctor's observation that Wells' work history does not suggest adequate exposure to dust to cause a pneumoconiosis. As I have earlier rejected this premise, and conclusions based upon it, I believe that the ventilatory studies should be accepted at their face value and interpreted in accordance with the regulatory standards. As so interpreted, these studies establish that Claimant is totally disabled by reason of a respiratory disease.
 
 
 34
 I conclude, on the basis of the pulmonary function studies and Claimant's own description of his condition, that Claimant's respiratory disablement prevents him from engaging in any gainful work even remotely comparable to that involved in his previous vocation. In view of Claimant's pneumoconiosis, and the evidence establishing a totally disabling respiratory impairment, the inference is warranted that pneumoconiosis is the operative cause, in whole or in part, of Claimant's totally disabling respiratory condition.
 
 
 35
 A study of the foregoing analysis suggests that the hearing officer was "swimming upstream" in reaching his ultimate findings. Moreover, the hearing officer's reasoning has a tendentious quality that prevents his decision from fully meeting the rationality test. Equally important, the hearing officer failed to meet the regulatory requirement that before benefits may be awarded, a claimant's pneumoconiosis must be found to be the primary reason for his total disability.
 
 
 36
 In an effort to excuse this failure, the majority of the Benefits Review Board said that the hearing officer's finding that the claimant's pneumoconiosis "is sufficiently severe as to be totally disabling," meets the regulatory requirement. In the face of the heart ailment, which the hearing officer found initially as totally disabling, the Board's statement simply fails to come to grips with the issue.
 
 
 37
 The majority of this court in an attempt to meet the obstacle head-on, struggles to demonstrate that the hearing officer's term "in whole or in part" is somehow equivalent to saying that his lung condition is the "primary cause" of his total incapacity to work. "Primary" means to me either first in time or first in degree. I am unable to see how the examiner's statement that "the inference is warranted that pneumoconiosis is the operative cause in whole or in part of claimant's total respiratory condition" is the same as saying that claimant's lung condition is "the primary reason" for his inability to engage in gainful work. (Emphasis added.) Rather, the language used by the hearing officer further demonstrates that his decision is both irrational and not in accordance with law.
 
 
 38
 I am in agreement with the dissent of the chairman of the Benefits Review Board:
 
 
 39
 The medical evidence does not support a finding that the claimant has a totally disabling respiratory condition, let alone that pneumoconiosis is the primary reason for his inability to engage in comparable and gainful work.
 
 
 40
 Claimant worked at his usual coal mine employment up until the time he had to have treatment, including surgery, for severe cardiovascular disease. The record is clear, and all parties agree, that the claimant is totally disabled by heart disease.
 
 
 41
 The record in this case does not establish that the claimant is totally disabled by pneumoconiosis according to the applicable regulatory standards pursuant to Sections 411(a), (b) and 422(h) of the Act.
 
 
 42
 In sum, the Benefits Review Board failed to follow proper standards of review of the hearing officer's decision, which, in my judgment, rests on suppositions and unwarranted inferences. I would reverse.
 
 
 
 [1]
 The Honorable Prentice H. Marshall, United States District Judge for the Northern District of Illinois, is sitting by designation
 
 
 [2]
 The Benefits Review Board read the hearing officer's decision as finding that the claimant was disabled under both alternatives. A close reading of the decision, however, indicates that the hearing officer proceeded under the regulations. It is not clear from his decision that he also considered whether the claimant could invoke the rebuttable presumption of 30 U.S.C. § 921(c)(4). We therefore confine our review to his findings under the first alternative
 
 
 [3]
 This presumption operates to link the claimant's diagnosed pneumoconiosis to his mining employment, and must be distinguished from the presumption in § 921(c)(4) which operates to establish that the claimant's totally disabling respiratory impairment is pneumoconiosis
 
 
 [4]
 Primary can also mean occurring first in time, or earliest. The American Heritage Dictionary, id. We think, however, that "primary" as used in the regulations is better interpreted as first in importance rather than in time. Nothing in the regulations suggests that if the claimant suffers from two impairments, the pneumoconiosis must have been the first to develop, as opposed to the first in importance
 
 
 [5]
 In addition, we note that Dr. Davis was not a treating physician, but an examining or forensic doctor employed by the operator/carrier
 
 
 [6]
 We also observe that according to the medical evidence, the claimant has made a speedy recovery from his heart surgery. Brief of Petitioners, App. 39, 41, 45. Nonetheless, his 1975 pulmonary function tests demonstrate a total respiratory disability
 
 
 [7]
 For example, at the hearing, the pro se claimant attributed his inability to work to his heart condition, without referring to his respiratory problems
 
 
 [1]
 20 C.F.R. § 410.426(a) provides in part:
 (A) miner shall be determined to be under a disability only if his pneumoconiosis is (or was) the primary reason for his inability to engage in . . . comparable and gainful work.
 
 
 [2]
 An excerpt from the claimant's testimony reads:
 Q. Did you retire at that time?
 A. I was forced to quit work.
 Q. Why did you quit work?
 A. From physical examination.
 Q. What was the nature of the physical examination?
 A. Heart trouble.
 
 
 [3]
 The words are defined as follows:
 Dyspnea shortness of breath difficult or labored expiration,
 Orthopnea inability to breathe except in an upright position, and
 Syncope a partial or complete temporary suspension of respiration or circulation.