690 F.2d 131
 Lois B. BISHOP, Petitioner/Cross-Respondent,
and
Director, Office of Workers' Compensation Programs, U. S.
Department of Labor, Cross-Respondent,
v.
PEABODY COAL COMPANY and Old Republic Insurance Company,
Respondents/Cross-Petitioners.
 Nos. 81-2284, 81-2390.
 United States Court of Appeals,
Seventh Circuit.
 Argued March 30, 1982.
Decided Oct. 12, 1982.
 
 David O. Kelley, Moore & Kelley, Boonville, Ind., for petitioner/cross-respondent.
 W. C. Blanton, Ice, Miller, Donadio & Ryan, Indianapolis, Ind., for respondents/cross-petitioners.
 Roger M. Siegel, Dept. of Labor, Washington, D. C., for cross-respondent.
 Before BAUER, NICHOLS,* and WOOD, Circuit Judges.
 NICHOLS, Circuit Judge.
 
 
 1
 This case comes before the court on appeal and cross-appeal from a decision and order of the Benefits Review Board (board) reversing Administrative Law Judge (ALJ) Richard A. Scully's decision granting petitioner here, claimant below, an award of benefits pursuant to the Federal Coal Mine Health and Safety Act of 1969, as amended, now commonly referred to as the Black Lung Benefits Act (hereinafter the Act) 30 U.S.C. §§ 901 et seq.
 
 
 2
 Claimant, Lois B. Bishop, was married to the deceased miner, William E. Bishop, from January 24, 1948, until he died on February 24, 1974, following cardiopulmonary bypass surgery.
 
 
 3
 At the time of his death, the decedent had been employed for over 8 years at the Squaw Creek Coal Company mine, which was operated by respondent/cross-petitioner, Peabody Coal Company. Prior to working at the Squaw Creek mine, decedent had worked continuously at the Tecumseh Coal Company mine. Except for periods of military service, his employment at Tecumseh exceeded 25 years.
 
 
 4
 The decedent worked as a welder, maintenance and repairman at both mines. At Tecumseh he worked in all areas of the mine. In 1965 he suffered a heart attack before going to work at the Squaw Creek mine. While at the Squaw Creek mine, decedent worked in the garage doing small repair jobs and apparently supervising other repairmen. He no longer did any heavy labor himself.
 
 
 5
 Claimant sought benefits pursuant to § 411(c)(5) of the Act, 30 U.S.C. § 921(c)(5) which provides a rebuttable presumption of entitlement to benefits for eligible survivors of a miner who died before March 1, 1978, and who was also employed prior to June 30, 1971, for 25 or more years in the nation's coal mines. Section 921(c)(5) also provides that a miner's survivors are not entitled to benefits if "it is established that at the time of his or her death such miner was not partially or totally disabled due to pneumoconiosis."
 
 
 6
 At the hearing before the ALJ, respondents, Peabody and Old Republic Insurance Company, presented evidence which included a report by Dr. R. H. Morgan, dated September 12, 1978, interpreting a chest X-ray of decedent showing no coal workers' pneumoconiosis; a second chest X-ray found by Dr. Morgan to be unreadable; and a death certificate which listed the immediate cause of death as intractable cardiac arrhythmia, the result of complications from cardiopulmonary bypass surgery due to aortic valve disease and coronary artery disease. The death certificate made no mention of pneumoconiosis. The record also includes three medical reports detailing decedent's heart disease and the respective treatment pursued by each of the physician authors.
 
 
 7
 Claimant presented evidence that prior to his first heart attack in 1965 the decedent had difficulty breathing during cold weather and at night, problem sleeping, and nocturnal coughing spells. Further, that decedent generally "went slower" in his efforts to do work around the house. Relying on this evidence and the fact that when decedent went to work at Squaw Creek mine he no longer did any strenuous work, the ALJ concluded that decedent was at least partially disabled at the time of his death.
 
 
 8
 The ALJ considered the X-ray evidence, which was negative for pneumoconiosis, and the death certificate, which made no mention of pneumoconiosis, in the light of 20 C.F.R. § 727.204(d). Section 727.204 is the regulation implementing the presumption created by 30 U.S.C. § 921(c)(5). That regulation provides in pertinent part:
 
 
 9
 (d) The following evidence alone shall not be sufficient to rebut the presumption:
 
 
 10
 (1) Evidence that a deceased miner was employed in a coal mine at the time of death;
 
 
 11
 (2) Evidence pertaining to a deceased miner's level of earnings prior to death;
 
 
 12
 (3) A chest X-ray interpreted as negative for the existence of pneumoconiosis;
 
 
 13
 (4) A death certificate which makes no mention of pneumoconiosis.
 
 
 14
 The ALJ concluded that none of the evidence advanced by respondents was sufficient to establish that the decedent's partial disability was not due to pneumoconiosis under his view of § 727.204(d). The ALJ also examined the three medical reports which chronicled decedent's heart disease concluding that the three reports, individually or taken together, did not "establish on the basis of reasonable medical certainty that decedent did not have pneumoconiosis or that his heart problems were solely responsible for his reduced ability to function * * *." ALJ slip op. at 6. Peabody Coal Company was therefore ordered to pay benefits to the claimant.
 
 
 15
 Peabody Coal Company and its insurance carrier, Old Republic Insurance Company, appealed the award of benefits to the board, which in a decision and order, dated June 12, 1981, reversed the ALJ's decision. In their appeal to the board, respondents challenged the constitutionality of § 921(c)(5) and its implementing regulations. Respondents' constitutional challenge was rebuffed by the board on the basis of its decision in Trujillo v. Kaiser Steel Corp., ______ BLR ______, BRB No. 78-398 BLA (June 11, 1981). Turning to the other aspects of the case, the board stated that the presumption invoked pursuant to § 921(c)(5) is rebutted if according to criteria established in Trujillo, supra, it is shown that: (1) the miner did not have pneumoconiosis; or (2) the miner was not totally or partially disabled at the time of his death; or (3) the partial or total disability which the miner may have suffered at the time of his death was not due to pneumoconiosis. The board also found that the ALJ's interpretation of 20 C.F.R. § 727.204(d) was incorrect in that the ALJ failed to consider the cumulative effect of the four types of evidence listed at § 727.204(d) in light of the board holding in Freeman v. Old Ben Coal Co., ______ BLR ______, BRB No. 79-114 BLA (June 11, 1981), that more than one of the four types of evidence may be sufficient to rebut the presumption invoked pursuant to § 921(c)(5). Further, the board concluded that the ALJ erred in his choice of the evidentiary standard which must be met by the employer regarding the three medical reports. In this connection, the board pointed out that the standard of "reasonable degree of medical certainty" has only been used in cases where the miner suffered from mixed respiratory impairments and where one such impairment was cigarette-smoking induced, a condition not present in this case. The board found that the medical reports established that any disability the miner may have suffered was not due to pneumoconiosis, but was instead due to his long-standing heart disease. Taken together with the negative chest X-rays and the death certificate which made no mention of pneumoconiosis, the board concluded that the § 921(c)(5) presumption was rebutted as a matter of law.
 
 
 16
 On appeal, claimant argues that the board, in its decision and order, ignored the existence of "statutory pneumoconiosis," a concept which means more than mere clinical pneumoconiosis. Further, the board erred in concluding that since there is no showing that the decedent had clinical pneumoconiosis, the presumption had been rebutted as a matter of law. Claimant asserts that because the burden of proof under § 921(c)(5) shifted to the employer, the record totally fails to establish that the decedent was not at least partially disabled due to statutory pneumoconiosis. Claimant challenges the board decision in Freeman, which held that more than one type of evidence listed at 20 C.F.R. § 727.204(d) may be sufficient to rebut the § 921(c)(5) presumption, as contrary to congressional mandate. Had the Secretary meant for the regulation to read in the disjunctive, he would have included the word "or" in the regulation. Thus it is argued, merely because two unreliable forms of evidence are combined does not make their total effect any more reliable.
 
 
 17
 Respondents take issue with every contention advanced by the claimant. They also cross-appeal challenging the board determination that § 921(c)(5) is constitutional. Respondents challenge § 921(c)(5) as unconstitutional on the ground that the statute denies them due process if generally applied to surface miners. They essentially contend that all of the evidence presented to Congress from which Congress could rationally conclude that duration of employment alone would give rise to total or partial disability due to pneumoconiosis, dealt with underground mines. Furthermore, respondents argue that the presumptions upheld by the Supreme Court in Usery v. Turner-Elkhorn Mining Co., 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976), all required, in addition to duration of employment, proof of at least one medical fact before another medical fact could be presumed.
 
 
 18
 * Respondents' due process attack on the § 921(c)(5) presumption is identical to the one made and rejected by this court in a companion case, Battaglia v. Director, Office of Workers' Compensation Programs, et al., 690 F.2d 106 (7th Cir. 1982). In Battaglia, we held that the § 921(c)(5) presumption is rational under the fifth amendment due process clause, and comports with the standards established by the Supreme Court in Turner-Elkhorn, supra, and Mobile, Jackson & Kansas City Railroad Co. v. Turnipseed, 219 U.S. 35, 31 S.Ct. 136, 55 L.Ed. 78 (1910). The rationale for our decision was articulated in our Battaglia opinion and need not be repeated here.
 
 II
 
 19
 Our review of the board decision is governed by the identical standards as is the board when it reviews the ALJ's decision and order. We must therefore determine whether the ALJ's decision was supported by substantial evidence, was not irrational, and in accordance with the law. Peabody Coal Co. v. Benefits Review Board, 560 F.2d 797, 799 (7th Cir. 1977). We affirm the board's decision.
 
 
 20
 Claimant contends that there is no showing in the record that decedent was not at least partially disabled due to "statutory" or "presumed" pneumoconiosis. See Ansel v. Weinberger, 529 F.2d 304, 310 (6th Cir. 1976). The statutory definition of pneumoconiosis which applies when the § 921(c)(5) presumption is invoked, includes true or clinical pneumoconiosis, but also provides as follows:
 
 
 21
 The term "pneumoconiosis" means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment.
 
 
 22
 (30 U.S.C. § 902(b).)
 
 
 23
 The applicable regulatory definition of pneumoconiosis, 20 C.F.R. § 727.202 provides:
 
 
 24
 For the purpose of the act, "pneumoconiosis" means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment. This definition includes, but is not limited to, coal workers' pneumoconiosis, anthracosilicosis, anthracosisanthro-silicosis, (sic) massive pulmonary fibrosis, progressive massive fibrosis silicosis, or silicotuberculosis arising out of coal mine employment. For purposes of this definition, a disease "arising out of coal mine employment" includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or aggravated by, dust exposure in coal mine employment.
 
 
 25
 Whether "statutory" or "presumed" pneumoconiosis is considered, we think that the board was correct in its determination that based on the record decedent did not suffer from either, hence the presumption was rebutted.
 
 
 26
 First, the board's vacation of the ALJ's dismissal of the three medical reports was correct. It will be recalled that the ALJ rejected the three reports because they did not establish by a "reasonable medical certainty that the decedent did not have pneumoconiosis or that his heart problems were solely responsible for his reduced ability to function * * *." ALJ Decision and Order, slip op. at 6. In Underhill v. Peabody Coal Co., 687 F.2d 217 (7th Cir. 1982), we disapproved the "reasonable degree of medical certainty" standard, and substituted in its place the "reasoned medical judgment" test. The ALJ's rejection of the three medical reports was not in accordance with the law. We therefore consider, infra, the three medical reports under the latter test.
 
 
 27
 Claimant also challenges the board's interpretation of 20 C.F.R. § 727.204(d). We upheld the board's view of this regulation in Freeman v. Director, Office of Workers' Compensation Programs, 687 F.2d 214 (7th Cir. 1982) against arguments, some of which were identical to the ones here advanced by claimant. In Freeman, we stated "(o)ur understanding of the four factors enumerated in section 727.204(d) is that each has some probative force, not that each should be disregarded as unreliable under all circumstances. By limiting the use of the criteria listed in the regulation, Congress was merely recognizing that claimants should not be easily defeated by a single piece of evidence. In our view, the presence of more than one of these factors tends to indicate the absence of reduced work ability." Id. The ALJ's rejection of both decedent's chest X-rays showing no pneumoconiosis, and the death certificate which did not mention pneumoconiosis, was therefore error.
 
 III
 
 28
 Our review of the evidence, including the medical reports submitted by respondents to rebut the § 921(c)(5) presumption, convinces us that the ALJ determination of no rebuttal is not supported by substantial evidence.
 
 
 29
 The admission report submitted by Dr. T. Vondehaar noted that decedent had an acute posterior lateral myocardial infarction in 1965, and beginning shortly before January 1973, had developed pronounced symptoms of effort angina (severe chest pains) and that on heavy exercise, his angina would also be accompanied by dyspnea (shortness of breath). Both conditions were attributed to decedent's heart disease by Dr. Vondehaar's uncontradicted medical report.
 
 
 30
 Dr. Vondehaar conducted a full physical exam of decedent on his admission to Deaconess Hospital in 1973. Decedent's lungs were found to be clear and no lung disease was reported by Dr. Vondehaar. Furthermore, the results of decedent's pulmonary function studies performed on May 15, 1973, were analyzed by Dr. Vondehaar and no disease of the lung or its sequelae were diagnosed.
 
 
 31
 The other two medical reports prepared by Drs. White and King confirm Dr. Vondehaar's diagnosis that decedent was suffering from serious, long-standing heart disease, to which he attributed decedent's symptoms of dyspnea and chest pain. Taken together with the chest X-rays negative for pneumoconiosis and the death certificate which made no mention of pneumoconiosis, this record establishes that decedent suffered from no lung disease whatsoever. Such uncontradicted evidence certainly rebuts the § 921(c)(5) presumption. If decedent had no lung disease, he could not be totally or partially disabled due to pneumoconiosis.
 
 IV
 
 32
 For the foregoing reasons, the decision of the Benefits Review Board is
 
 
 33
 Affirmed.
 
 
 
 *
 Judge Nichols was an Associate Judge of the United States Court of Claims when this case was argued. He was sitting by designation. On October 1, 1982, he became a member of the newly created United States Court of Appeals for the Federal Circuit, with the title of Circuit Judge, by various provisions of Pub.L.No. 97-164