782 F.2d 97
 Clyde D. KNUDTSON, Petitioner,
v.
BENEFITS REVIEW BOARD OF the UNITED STATES DEPARTMENT OF
LABOR, Peabody Coal Company, and Old Republic
Insurance Companies, Respondents,
Director, Office of Workers' Compensation Programs of the
United States Department of Labor, Party-In-Interest.
 No. 84-2724.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 28, 1985.
Decided Jan. 21, 1986.
 
 Julian N. Henriques, Jr., Leg. Asst. Foundation, Chicago, Ill., for petitioner.
 J. Michael O'Neill, Dept. of Labor, Mark E. Solomons, Kilcullen, Wilson & Kilcullen, Chartered, Washington, D.C., for respondents.
 
 
 1
 Before CUMMINGS, Chief Judge, FLAUM, Circuit Judge, and CAMPBELL, Senior District Judge.*
 
 
 2
 WILLIAM J. CAMPBELL, Senior District Judge.
 
 
 3
 This is an appeal of a United States Department of Labor Benefits Review Board decision which affirmed the ruling of that department's administrative law judge (ALJ) denying claimant Clyde Knudtson black lung benefits pursuant to the regulations of the Black Lung Benefits Act, 30 U.S.C. 901, et seq. For reasons set forth below, we affirm the rulings of the lower tribunals.
 
 
 4
 Claimant Knudtson is approximately 64 years old. He worked for Respondent Peabody Coal Company from 1945 until his retirement in February, 1976. His job during this time period was as a welder repairing equipment used at the mines. Knudtson testified that during the majority of his time at Peabody he worked in a garage away from the regular exposure to coal dust experienced by ordinary miners. It is estimated only 20-30% of his time was spent working in the mines. The ALJ concluded that in his position as welder/repairman Knudtson's exposure to coal dust was neither as regular or intense as that of ordinary miners.
 
 
 5
 Knudtson's medical history of respiratory disease is somewhat unsettled due to conflicting testimony. Knudtson testified he began experiencing breathing problems in his mid-forties while playing sports, climbing heavy machinery and carrying heavy equipment. He claimed his respiratory problems worsened until he was stricken by a heart attack in March of 1975. At that point Knudtson missed work for eleven months and returned to work for a mere two days before the mines closed. Knudtson testified his current condition has deteriorated and he now gets short of breath walking and climbing stairs.
 
 
 6
 The ALJ found Knudtson's account of his breathing difficulties not credible. He noted Knudtson was never medically treated for breathing impairments prior to his heart attack in 1975. In fact, Knudtson's hospital records indicated he specifically denied breathing problems prior to his heart attack. The ALJ further noted physician reports which reveal Knudtson denied any dyspnea even after the heart attack.
 
 
 7
 Significantly, claimant has always been a heavy smoker of cigarettes. To what extent is in controversy. Claimant initially testified he was a pack-a-day smoker since age 21 and that he quit smoking for three years after his heart attack in 1975. He testified he currently smokes three cigarettes a day, one after each meal. Yet on cross-examination Knudtson claimed he did indeed smoke occasionally during the three-year period following his heart attack, as much as half a pack a day. The ALJ found Knudtson's account of his smoking history "totally lacking in credibility" and drew the conclusion he smoked two packs of cigarettes a day prior to his 1975 heart attack and one pack a day thereafter. The ALJ further concluded that despite all of the above Knudtson had failed to establish he had pneumoconiosis and that he does not have a totally disabling respiratory disease. Knudtson was consequently denied black lung benefits.
 
 
 8
 In reviewing the decisions of the lower tribunals in this matter we follow the standard of review enunciated in Consolidation Coal Co. v. Chubb, 741 F.2d 968, 971 (7th Cir.1984):
 
 
 9
 Our review of the Benefits Review Board decision is governed by the identical standards as is the Board when it reviews the ALJ's decision and order. We must therefore determine whether the ALJ's decision was supported by substantial evidence, was not irrational, and was in accord with the law. Bishop v. Peabody Coal Co., 690 F.2d 131, 135 (7th Cir.1982); Underhill v. Peabody Coal Co., 687 F.2d 217, 222 (7th Cir.1982); Peabody Coal Co. v. Benefits Review Board, 560 F.2d 797, 799 (7th Cir.1977). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).
 
 
 10
 We conclude the findings of the ALJ are supported by substantial evidence and are adequate to support his ruling denying claimant benefits.
 
 
 11
 20 CFR Sec. 727, et seq. sets forth the reviewing guidelines of pending and denied claims under the Black Lung Benefits Act. Under Sec. 727.203(a) of the regulations a miner engaged in coal mine employment for at least ten years is initially presumed to be totally disabled due to pneumoconiosis if one of four medical requirements is met. All parties admit claimant Knudtson is entitled to this Sec. 727.203(a) "interim presumption" (hereinafter the section (a) interim presumption) as a result of ventilatory studies performed on him which reached appropriate levels. However, under the regulations this interim presumption can be rebutted if one of four findings listed in Sec. 727.203(b) is made:
 
 
 12
 (1) The evidence establishes that the individual is, in fact, doing his usual coal mine work or comparable and gainful work; or
 
 
 13
 (2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work; or
 
 
 14
 (3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment; or
 
 
 15
 (4) The evidence establishes that the miner does not, or did not, have pneumoconiosis.
 
 
 16
 The ALJ found that respondent Peabody had successfully rebutted the interim presumption under sections (b)(2) and (4). We shall first discuss his finding pertaining to section (b)(4), which we believe is sound and reason for affirmance on its own.
 
 
 17
 During the ALJ hearing evidence concerning claimant's medical condition was submitted in one form or another by eight doctors. Only one of these doctors was willing to conclude claimant had any signs of pneumoconiosis. A Dr. Gordonson read an X-ray of claimant's chest and concluded it positive for category 1/o pneumoconiosis, one of the lowest levels possible. Significantly, two other doctors, Drs. Mintzer and Cugell, read the same X-ray and diagnosed a negative, pneumoconiosis-free chest. In contrast to the isolated diagnosis of Dr. Gordonson are the diagnoses of Drs. Cugell, Kamath, Nudelman, Mintzer, Hessl, Hickey and Fitzpatrick. These seven physicians all concluded claimant Knudtson's X-ray evidence was negative for pneumoconiosis. Even Dr. Hessl, whose report was written on behalf of claimant for purposes of this litigation, could only diagnose "possible coal worker's pneumoconiosis, not evident on chest X-ray." Possible pneumoconiosis is not equivalent to the existence of pneumoconiosis. In sum we agree with the ALJ's conclusion that the negative X-ray evidence is overwhelming. While we recognize negative X-rays alone are not always sufficient to rebut the presumption (see Underhill v. Peabody Coal Co., 687 F.2d 217 (7th Cir.1982); Ansel v. Weinberger, 529 F.2d 304, 310 (6th Cir.1976)) they assume significant probative value when they exist without any significant medical evidence to the contrary.
 
 
 18
 In the case sub judice, there is literally no medical evidence submitted to the contrary. Dr. Cugell concluded claimant had some chronic bronchitis and emphysema but that this was due to his history of cigarette smoking. Dr. Kamath read a 1976 X-ray of claimant as showing a normal chest. Dr. Nudelman read a 1979 chest X-ray as negative. Dr. Hessl, secured by claimant, examined claimant in September 1980 and concluded "coal worker's pneumoconiosis was not evident on chest X-ray." Dr. Mintzer read six different X-rays between 1975 and 1980, including the X-ray read as positive by Dr. Gordonson, and concluded claimant's chest was negative for pneumoconiosis. Dr. Hickey examined claimant in 1976 and found coronary artery disease but no respiratory or pulmonary disease or impairment. Dr. Fitzpatrick, who treated claimant for his heart attack in 1975, found no evidence of respiratory disease. Beyond this, claimant fails to produce any medical testimony or evidence (other than the Dr. Gordonson X-ray reading, which is contradicted by Drs. Cugell and Mintzer) which establishes he has pneumoconiosis. As we said in Underhill v. Peabody Coal Co., supra:
 
 
 19
 "... Peabody met its burden for rebuttal by introducing the uncontradicted medical opinion of Doctor Nay. Absent the support of a credible medical judgment to the contrary, the ALJ could not rationally conclude that Peabody failed to rebut the presumption."
 
 
 20
 Similarly, in the case at bar we conclude that the ALJ's ruling that respondent Peabody met its burden for rebuttal under section (b)(4) is supported by substantial evidence. Having found the record before us contains substantive evidence to reasonably support the ALJ's conclusion, our standard of review compels us to affirm the ALJ's ruling. See Chubb, supra; U.S. Pipe & Foundry Co. v. Webb, 595 F.2d 264, 266 (5th Cir.1979); Peabody Coal v. Benefits Review Board, 560 F.2d 797, 802 (7th Cir.1977).
 
 
 21
 Claimant argues in great length that his application for benefits was rejected due to the lower tribunal's failure to employ the relevant regulations correctly. The ALJ rejected Knudtson's claim for benefits under 20 CFR Sec. 727.203(b)(2) and (4) (see p. 4 above). On appeal the Benefits Review Board affirmed the ALJ ruling on (b)(2) grounds and therefore felt no need to adjudicate claimant's rejection along (b)(4) lines. Claimant believes he was inappropriately rejected on (b)(2) grounds because both the ALJ and the Board relied on Sykes v. Itmann Coal Co., 2 BLR 1-1089 (1980), a case claimant believes is in err in ascertaining how the (b)(2) standard should be invoked to rebut the section (a) interim presumption. Claimant believes that under Sykes an employer can incorrectly rebut the interim presumption under (b)(2) by establishing the miner does not have a respiratory/pulmonary impairment or that no such impairment prevents him from doing his usual coal mine work or comparable work. Claimant believes this is a faulty analysis. He believes the issue under (b)(2) is simply whether the miner is disabled and unable to do his usual work for whatever reason, i.e., the cause or source of the disability is not relevant under (b)(2) but rather a subject for inquiry under (b)(3). Hence, claimant believes the proper inquiry under (b)(2) is whether he has any impairment (be it cardiac--which claimant does have--or another) not whether he has a respiratory ailment that precludes him from working. Hence, claimant argues Peabody never rebutted the interim presumption under (b)(2) as the lower tribunals suggest.
 
 
 22
 Whatever argument is to be made that the Sykes standard is inappropriate and that the lower tribunals erred in relying on it for the purposes of an employer's (b)(2) rebuttal, we do not believe we need to reach any conclusions in this area in order to affirm the rulings against claimant. This is because we believe Mr. Knudtson has failed to rebut adequately the major deficiency in his claim found in another arena entirely--the fact that there is overwhelming medical testimony and data which could lead the lower tribunals to conclude Mr. Knudtson does not have pneumoconiosis (see (b)(4) supra). With this in mind it is of little significance that the lower tribunals may have ruled Peabody effectively rebutted the section (a) interim presumption under section (b)(2) because Knudtson had no pulmonary/respiratory impairment which would prevent him from doing his usual or comparable work. Ultimately, what is significant in this case is that there is substantial evidence to conclude, as the ALJ did, that Mr. Knudtson does not have pneumoconiosis. Since there is substantial evidence, there is no need to proceed to an additional inquiry under (b)(2). Hence we need not rule on claimant's Sykes' argument under the circumstances of this appeal.
 
 
 23
 Claimant attacks the testimony of Dr. Cugell, head of the pulmonary section of the Department of Medicine at Northwestern University. Claimant believes that Dr. Cugell's testimony should be discredited because he evidenced a hostility toward the Black Lung Act when he stated, among other things, that certain lung function standards set forth were too liberal. Claimant also believes Cugell's testimony is not credible as evidenced by Cugell's statement that he cannot differentiate with any degree of certainty whether lung disability derives from cigarette smoking or coal dust exposure. Claimant's arguments in this area are without merit. Dr. Cugell's objection to the governing guidelines of the Black Lung Act does not mean his diagnosis as to claimant's medical condition is necessarily not credible. The ALJ was allowed to weigh Dr. Cugell's testimony as he saw fit and we see no error in his reliance upon it. More importantly, claimant's attempt to impeach Dr. Cugell's medical conclusions would be more persuasive if there was any significant line of medical testimony contradicting Cugell's conclusions. However, Cugell's medical conclusions as to claimant's condition are basically in conformity with the remainder of the medical testimony. Therefore, impeaching the Cugell testimony is of little value to claimant under these circumstances.
 
 
 24
 We have considered claimant's remaining arguments in his reply and supplemental briefs and have reviewed his citation of additional authority and find the arguments advanced do not mandate reversal of the decisions of the lower tribunals. Claimant may have some form of lung disease but this does not necessarily mean it is pneumoconiosis, especially in light of his long smoking history. Claimant may have met appropriate ventilatory standards which invoked the interim presumption of Sec. 727.203(a), however, respondent Peabody has come forth with a number of physicians and medical reports indicating an absence of pneumoconiosis in claimant's lungs. Significantly, claimant fails to produce any significant medical expert or report declaring he has signs of pneumoconiosis which could conceivably outweigh the medical evidence reaching a contrary conclusion. Hence, the ALJ's conclusion ruling Peabody effectively rebutted claimant's section (a) interim presumption under (b)(4) is supported by substantial evidence and must be affirmed.
 
 
 25
 Claimant may not be able to do his usual or comparable work at this point but that may not be due to disabling pneumoconiosis. We note that claimant has already been awarded total disability benefits under the Social Security Act due to disabling heart disease. Assuming arguendo the lower tribunals' (b)(2) ruling was in err, it was harmless error in light of the fact that respondent Peabody has effectively rebutted claimant's argument for benefits under Sec. 727.203(b)(4). Simply put, in order to establish one has disabling pneumoconiosis, some material medical data must be introduced indicating the presence of pneumoconiosis. Claimant has failed to meet his burden in this area. The judgment of the lower tribunals is therefore AFFIRMED.
 
 
 
 *
 The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation