**Albert Raymond OLIVER, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.**

No. 88–2190.

United States Court of Appeals, Eighth Circuit.

Submitted March 16, 1989.

Decided Nov. 3, 1989.

David L. Rush, Paris, Ark., for petitioner.

Elizabeth Hopkins and Sylvia T. Kaser, Washington, D.C., for respondent.

Before FAGG, and BEAM, Circuit Judges, and DUMBAULD *, Senior District Judge.

DUMBAULD, Senior District Judge.

Appellant, Albert R. Oliver, petitions for review of an order of the Benefits Review Board (hereinafter BRB) of the United States Department of Labor, which on July 2, 1986, affirmed denial of benefits under the "Black Lung Act" (30 U.S.C. 901–945 Supp. V 1987) by Administrative Law Judge Melvin Warshaw (hereinafter ALJ).

We have jurisdiction to review such cases, by virtue of 33 U.S.C. 921(c) as incorporated by 30 U.S.C. 932(a), but the scope of review is limited to determining whether the BRB properly adhered to its standard of review, and whether the ALJ's findings are supported by substantial evidence. *Clark v. Crown Construction Company,* 887 F.2d 149 (8th Cir.1989); *Hon v. Director, O.W.C.P.,* 699 F.2d 441, 444 (8th Cir.1983); *Parker v. Director, O.W.C.P.* 590 F.2d 748, 749 (8th Cir.1979).

Claimant was born on October 6, 1911, and worked as a coal miner for 23 years, in Arkansas. Warned by his doctor that he should quit that type of work if he expected to live long, he worked subsequently at an apple orchard in the State of Washington until retirement in April, 1974. He quit smoking and mining simultaneously in 1951. His claim was filed on November 29, 1973. [Tr. 19–21, 28, hearing of Sep. 25, 1985]

A claim filed at the date Oliver's was filed must be reviewed by the ALJ under the criteria set forth in part 727 of the Regulations contained in 20 CFR. See Sec. 402 of Black Lung Benefits Reform Act of March 1, 1977, 92 Stat. 95–96, and 20 CFR 718.1(b), and 727.200. See also 30 U.S.C. 921(a) and 921(c)(4), Section 203(a)(5) of Act of December 29, 1981, 95 Stat. 1644; Section 202(b)(2) of said Act, 95 Stat. 1643.

Furthermore the Regulations provide in 20 CFR 727.203(d) that if a claimant's eligibility is not established under 20 CFR 727.-203 "such eligibility may be established under Part 718 of this subchapter as amended from time to time." [1]

Pneumoconiosis is defined in 20 CFR 727.202 [2] and 20 CFR 727.203(a) establishes an "interim presumption" that

A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis arising out of that employment, if one of [four] requirements is met. [3]

These are:

(1) A chest X-ray, or biopsy, establishing the existence of pneumoconiosis.

---

* The Honorable Edward Dumbauld, Senior United States District Judge, of the Western District of Pennsylvania, sitting by designation.

1. See also 20 CFR 718.2, 718.305.

2. The definition tracks that found in Section 402(b) of the Black Lung Act, as amended by Section 2(b) of the Black Lung Benefits Reform Act of March 1, 1977, 92 Stat. 95, to read "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employ-

ment." The definition is "statutory", and includes but is not limited to "true" or "clinical" pneumoconiosis. *Bishop v. Peabody Coal Co.,* 690 F.2d 131, 135 (7th Cir.1982).

3. This presumption is based upon 30 U.S.C. 921(c)(2) and (4), Section 411 of Black Lung Act, 83 Stat. 793, as amended by Section 202(b)(1) and (4) of the Act of December 29, 1981, 95 Stat. 1643.

(2) Ventilatory studies establishing the presence of a chronic respiratory disease of sufficient severity to meet the requirements specified in a table set forth in the Regulations.

(3) Blood gas studies demonstrating an impairment in transfer of oxygen from the lung to the blood, if of sufficient severity to meet requirements specified in the Regulation.

(4) Other medical evidence, including the opinion of a physician, establishing a totally disabling respiratory or pulmonary impairment.

The pertinent Regulation also provides in 20 CFR 727.203(b) that

In adjudicating a claim under this subpart, all relevant medical evidence shall be considered.[4]

■ The viability of Oliver's claim depends primarily upon whether or not he is entitled to the benefit of the "interim presumption" that a miner with ten years' employment in a mine will be presumed to be totally disabled due to disease arising out of such employment.[5] This is a rebuttable presumption, but the ALJ in the case at bar did not determine that the presumption had been rebutted,[6] but that it was inapplicable.

4. This provision is based upon 30 U.S.C. 923(b), Section 413(b) of Black Lung Act as amended by Section 4(b) of Black Lung Benefits Act of March 1, 1972, 86 Stat. 154, which provides:
   In determining the validity of claims under this part, all relevant evidence shall be considered, including, where relevant, medical tests such as blood gas studies, X-ray examination, electrocardiogram, pulmonary function studies, or physical performance tests, and any medical history, evidence submitted by the claimant's physician, or his wife's affidavits, ... and other supportive materials.

5. See text at note 3, *supra*. The irrebuttable presumption of 30 U.S.C. 921(c)(3) does not apply to Oliver, though his 23 year service exceeds the time requirement for invoking that presumption, but its requirements for severity of disability are not met.

6. Congress undoubtedly believed that it would be miraculous if a miner exposed to coal dust for a decade or more did *not* have a "black lung" disease. See note 2, *supra*. But Oliver

Was this determination sufficiently supported by the record evidence?

As to the first ground for invoking the presumption (chest X-ray), the ALJ's conclusion is correct. Dr. Harold W. Lamberton read an X-ray taken June 9, 1975, as 2/1 (numerous small rounded opacities), qualifying under criteria set forth in 20 CFR 727.203(a)(1), which refers to 20 CFR 410.428[7] of the Regulations.

Claimant contends that Dr. Lamberton's positive reading should be accepted as dispositive under 30 U.S.C. 923(b), Section 413(b) of the Black Lung Act, which as amended by Section 5(a) of the Black Lung Benefits Reform Act of March 1, 1978, 92 Stat. 97, provides that:

In any case in which there is other evidence that a miner has a pulmonary or respiratory impairment, the Secretary *shall accept a board certified or board eligible radiologist's interpretation of a chest roentgenogram* which is of a quality sufficient to demonstrate the presence of pneumoconiosis submitted in support of a claim for benefits under this title if such roentgenogram has been taken by a radiologist or qualified technician, except where the Secretary has reason to believe the claim has been fraudulently represented. [Italics supplied]

may have been fortunate and become a fruit-grower in time. A good defense to his claim under 20 CFR 727.204(b)(4) might have been available. The evidence of *disability* from (as distinguished from the *existence* of) statutory pneumoconiosis largely depends on claimant's own assertions which could be discounted as self-serving. It seems unlikely that a 62 year old man with a hiatus of over 21 years in mining experience could be found capable of resuming his old job in the mine so as to establish a defense under 727.204(b)(1)–(3).

7. DX–12. Dr. E. Nicholas Sargent later, on January 21, 1976, read the same film as negative for pneumoconiosis. DX–10. Dr. Sargent is a Class B reader. He also read as negative for pneumoconiosis later X-rays taken March 1, 1982, and September 13, 1983. DX–37 and DX–38. Since "black lung" is a progressive disease [*Padavich v. Mathews*, 561 F.2d 142, 146 (8th Cir.1977); *Back v. Director*, 796 F.2d 169, 172–73 (6th Cir.1986)], a negative X-ray later in time, if found convincing, certainly weakens confidence in an earlier positive reading.

However, the record does not disclose whether or not Dr. Lamberton is board certified, board eligible, or a class B reader. The ALJ comments (R. 35) that he "was not board certified in radiology or a B reader." But though this statement is not supported by record evidence, the BRB argues that claimant should have the burden of establishing the qualifications of the reader in order to make the rule of Section 413(b) applicable.[8] We need not decide that issue, since in any event it seems clear that there would be no point in remanding the case for determination of Dr. Lamberton's qualifications. It may fairly be inferred that he is not a board certified, board eligible, or Grade B reader. For the question was raised at the first hearing [9] before ALJ White, and the case was in fact remanded [10] and subsequently referred to ALJ Warshaw. The regulation requires that the qualifications of a physician reading an X-ray be given,[11] and it is difficult to believe that when the case was again heard before ALJ Warshaw claimant's capable counsel would not have proved Dr. Lamberton's qualifications if thereby the claimant's case would have been significantly strengthened.[12]

Hence it was proper for the ALJ to consider Dr. Sargent's readings with respect to content as well as film quality, and legitimate to accept his conclusions rather than those of Dr. Lamberton in assessing the weight of the X-ray evidence.

We conclude therefore that the ALJ's ruling as to the first ground for applicability *vel non* of the interim presumption must be sustained.

How does the record stand with respect to the second ground (ventilatory studies)?

■ Claimant argues that the test was performed with "a Canatron SC–20 Spymetric computer" which does not use paper. Claimant asserts "that the instrument utilized was state of the art and that the regulations have failed to keep up with the medical progress made in testing ventalatory [*sic*] output."

Hence "the Claimant should not be penalized for the Department of Labor's testing facility not having the type of machine which was customarily used."

There appears to be much justice in claimant's contention. But the Regulations plainly require tracings.[13]

■ This Court is not equipped to take judicial notice of alleged obsolescence in medical equipment in hospitals unless there is evidence developed in the record regarding the matter. Nor are we prepared to reverse the ALJ or BRB on that ground. The point is more properly one for attention by the promulgator of the Regulations. *Interest rei publicae ut sit finis litium.*

If coal miners are thought to be wards of the Congress as sailors are wards of admiralty,[14] nevertheless diligent counsel should see to it that exhibits conform to the existing regulations, unless there is a situation of extraordinary hardship, and then should seek help in quarters where it may appropriately be found.

We hold that the ALJ committed no error as to the determination made with respect

---

**8.** R. 2. It could be argued against this view that Congress intended the Labor Department to assist claimants with respect to their receipt of benefits. See 30 U.S.C. 923(b) *in fine*, and 924a, added by Sections 5(b) and 11 of 1978 Act, 92 Stat. 97, 101.

**9.** Tr. 7, 12, hearing of September 30, 1982.

**10.** The dispute between the parties as to the reasons for remand is immaterial. ALJ White's remand order of January 24, 1983, appears as DX–21.

**11.** 20 CFR 718.102(c).

**12.** Claimant's argument (R.20) that there was no blank space on the form for recording the read-

er's qualifications is singularly fatuous. The proof could have been submitted by affidavit or other documentary evidence, without the burden of calling the doctor to the witness stand.

**13.** The Regulation specifically states:

The three appropriately labeled spirometric tracings, showing distance per second on the abscissa and the distance per liter on the ordinate, must be incorporated in the file. The paper speed to record the FEV1 should be at least 20 millimeters (mm.) per second.

**14.** See note 8, *supra*.

to the second ground which might trigger the interim presumption.

As to the third ground for invoking the interim presumption (blood gas studies) the ALJ found that none of the studies in the record yielded qualifying results. This conclusion is sufficiently supported by evidence. (See DX–36, DX–34, and ALJ–1).

■ Finally, we consider the fourth ground for invoking the interim presumption (other evidence, *i.e.* physicians' opinions). Here, it would seem, the ALJ (and the BRB) also [15] went astray by *excluding from consideration* certain reasoned medical reports of examining physicians (rather than considering them and finding them *outweighed* or unconvincing on balance).

This contravened the command of Congress that *all* evidence be considered.[16]

Particularly significant are the reports of Dr. William L. Berry (DX–22) and Dr. Leon T. Davis (DX–39), stating that Oliver had *chronic obstructive pulmonary disease.* (This is included within the meaning of "statutory pneumoconiosis.")[17] Their opinions, if taken into consideration and accepted, might well have affected the outcome of the ALJ's determination.

The BRB upheld disregard of these opinions on the ground that they were based, to some extent, upon X-ray and ventilatory studies, and therefore do not constitute "other" evidence.[18]

This failure to consider relevant medical evidence is plainly error of law and contravention of a statutory enactment.[19]

■ A physician's professional opinion may be based upon many different types of data. Some types are intrinsically more reliable and probative than others in making diagnostic determinations. But if any source is professionally accepted and used in the normal course of business by practicing physicians it may certainly be used as the basis and foundation of an opinion offered under 20 CFR 727.203(a)(4).

If medical history (even if obtained from the patient himself or his wife or other laymen with reliable opportunity to observe) or the doctor's own personal knowledge based upon observations during a long course of professional treatment of the particular patient are legitimate sources to be relied upon in professional practice, and are in fact regularly relied upon in the normal course of business, certainly the preferred and *per se* operative indications afforded by X-ray evidence, ventilatory and blood gas studies, are certainly *a fortiori* appropriate data upon which to base a professional judgment.

Such studies may properly be used in that manner (even if not sufficient, standing alone, to meet the quality standards required for independently triggering the interim presumption) because the physician's own past experience and knowledge of the patient's symptoms and physical condition, coupled with his professional training and experience, may enable him to discount and adjust for any imperfections in a single testing procedure.

We therefore remand the instant case to the Department of Labor for reconsideration upon the basis of *all* evidence in the record.[20]

---

15. The BRB ruled (R.3):
> Although claimant correctly points out that the administrative law judge did not address two x-ray reports and a pulmonary function study, the Board has held that the term "other medical evidence" contained in Section 727.-203(a)(4) does not include x-ray evidence or ventilitory [*sic*] studies.... We find, therefore, that it was proper for the administrative law judge not to consider such evidence pursuant to Section 727.203(a)(4).

16. See note 4 *supra.* In appropriate cases, even affidavits of a claimant's wife may be relied upon. Certainly reasoned opinions of physicians, even if based upon medical history, may be found convincing. The basis of benefits, as granted by Congress, is the substantive *probandum* (mine-related disabling disease) not the mode of proof.

17. See note 2, *supra.*

18. See note 15, *supra.*

19. See note 4, *supra.*

20. Since remand upon the grounds hereinabove stated is necessary, it will serve the interests of fairness to afford claimant also the opportunity to establish, if he can, the qualifications of Dr. Lamberton as a board-certified, board-eligible, or B-reader on June 9, 1975, and for considera-

Moreover, neither the ALJ nor the BRB heeded the command of 20 CFR 727.203(d) that if a claimant's eligibility is not established under 20 CFR 727.203 it may be established under Part 718.[21] It is of course highly unlikely that a claim which fails under Part 727 (which is regarded as more liberal to black lung victims than Part 718) could be upheld under Part 718, but the theoretical possibility recognized by the statute should be formally dealt with and disposed of before denying the claim.

For the foregoing reasons, the case is REMANDED.

tion to be given to the appropriate consequences of the existence of such qualifications, if established. See text at notes 9–12, *supra.* It would also be appropriate to receive expert testimony as to the reliability of the machine used for ventilatory studies. See text at note 13, *supra.*

**21.** See note 1, *supra.*