Paul D. **CLARK**, Petitioner,

v.

**CROWN CONSTRUCTION COMPANY**, Respondent,

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR**, Party–in–Interest.

No. 88–2275.

United States Court of Appeals, Eighth Circuit.

Submitted March 16, 1989.

Decided Oct. 6, 1989.

Rehearing Denied Dec. 7, 1989.

Roger T. Jeremiah, Fort Smith, Ark., for appellant.

Kendall B. Jones, Ft. Smith, Ark., for appellee.

Before FAGG and BEAM, Circuit Judges, and DUMBAULD *, Senior District Judge.

DUMBAULD, Senior District Judge.

Appellant seeks review of a decision of the Benefits Review Board in the Department of Labor denying his claim for "black lung" benefits based upon his work as a truck driver loading and hauling coal.[1] We affirm.

It will be helpful to discuss briefly *in limine* this Court's jurisdiction over this

---

* The Honorable Edward Dumbauld, Senior United States District Judge, of the Western District of Pennsylvania, sitting by designation.

1. His claim was filed March 29, 1982. The place of employment and exposure to coal dust is Arkansas. See *Hon v. Director, Office of Workers' Compensation Programs, United States Department of Labor,* 699 F.2d 441, 443–44 (8th Cir.1983).

2. Apparently this Court has never heretofore expressly addressed the jurisdictional issue, but *sub silentio* (as did the Eleventh Circuit in *Garland v. Director, U.S. Department of Labor,* 713 F.2d 613, 614 (11th Cir.1983); *Director, Office of Workers' Compensation Programs v. Drummond Coal Co.,* 831 F.2d 240, 241 (11th Cir.1987)) assumed the existence of jurisdiction, [*Coughlan v. Director, Office of Workers' Compensation Programs,* 757 F.2d 966, 968 (8th Cir.1985); *Hon v. Director, Office of Workers' Compensation Programs,* 699 F.2d 441, 442–43 (8th Cir.1983)] without reviewing the intricate reasoning of the

type of case.[2] "Black lung" (pneumoconiosis) was first recognized as a disabling and deadly disease by the Coal Mine Safety and Health Act of December 30, 1969, 83 Stat. 742, 792. At first claims were handled by the Department of Health, Education, and Welfare[3] under its procedures for dealing with disability and death claims under Social Security laws. "By 1972, however, the record of the Social Security Agency of the Department of Health, Education and Welfare in processing and disposing of pneumoconiosis claims was anything but satisfactory to Congress." *Begley v. Mathews,* 544 F.2d 1345, 1347 (6th Cir.1976). Accordingly, the Black Lung Benefits Act of May 19, 1972, 86 Stat. 155, 156–57, was enacted. It liberalized the criteria for granting benefits, and also sought to expedite disposition of the backlog of pending claims. It provided a new system for administration.[4]

Ultimately, it was the design of Congress (pneumoconiosis being recognized as an occupational disease indigenous to the coal industry, the burden of compensation for which should be borne by the companies engaged in that business), that claims were to be handled under State workmens' compensation laws when such laws were listed by the federal Secretary of Labor as providing adequate benefits for victims of the

---

cases in the Third, Fourth, Sixth, and Seventh Circuits, which will be discussed hereinafter.

3. Hereinafter referred to as H.E.W. (now known as Department of Health and Human Services, 93 Stat. 695).

4. One important reform was the liberalization of evidentiary requirements by forbidding denial of benefits solely on the basis of a chest X-ray, but requiring consideration of all relevant evidence. Section 413(b) of the 1969 Act, as amended by Section 4(f) of Black Lung Act, 86 Stat. 154. The new and more liberal criteria of the May 19, 1972, Act were to be applied to all claims filed before that date, even if they had already been denied by H.E.W. Such claimants were to be notified that their claims would be reviewed under the new statutory provisions. Section 431 of 1969 Act, added by Section 6 of Black Lung Act, 86 Stat. 156. For a comprehensive explanation of the black lung compensation provisions, see *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 6–12, 96 S.Ct. 2882, 2888–91, 49 L.Ed.2d 752 (1976); and *Mullins Coal Co. v.*

disease.[5] Meanwhile, pending the establishment of such a list, benefits were to be paid by the Secretary of Labor with respect to claims filed between July 1 and December 31, 1973, although such claims might be filed as before with H.E.W. and transferred to the Department of Labor for handling.[6]

In determining such interim claims under Section 415 (known as Title IV, part C claims) the Secretary of Labor "shall, to the extent appropriate, follow the procedures described in sections 19(b), (c), and (d) of Public Law 803, 69th Congress (44 Stat. 1424, approved March 4, 1927), as amended."[7] It will be noted that this provision relates only to *procedures before the Secretary of Labor*, and says nothing about the mode of judicial review of the Secretary's determinations.

Apparently of crucial significance in interpreting the statutory scheme[8] for judicial review of black lung determinations is the following provision found in Section 422(a) of the 1969 Act:

> During any period after December 31, 1972, in which a State workmen's compensation law is not included on the list published by the Secretary under § 421(b) of this part, the provisions of Public Law 803, 69th Congress (44 Stat. 1424, approved March 4, 1927), as amended (other than the provisions contained in sections 1, 2, 3, 4, 7, 8, 9, 10, 12, 13, 29, 30, 31, 32, 33, 37, 38, 41, 43, 44, 45, 46,

47, 48, 49, and 51 thereof) shall (except as otherwise provided in this subsection and *except as the Secretary shall by regulation otherwise provide*), be applicable to each operator of an underground coal mine in such State with respect to death or total disability due to pneumoconiosis arising out of employment in such mine.[9]

Pretermitting any doubts based on the fact that the addressee of this provision is the mine operator whose substantive liability for black lung benefits is under consideration, rather than the procedures for authorizing appeals to this Court from administrative determinations, we note that Section 21 of the Longshoremen's Act regarding mandamus and other remedies in the District Courts with respect to decisions of the Deputy Commissioner[10] is not listed among the *inapplicable* provisions specified in Section 422(a).

We observe next that on October 27, 1972, extensive revisions of the Longshoremen's Act were made, including the requirement that hearings under the Act must be conducted by a hearing examiner (ALJ) qualified under the Administrative Procedure Act (5 U.S.C. § 554, 80 Stat. 384) and that all powers of Deputy Commissioners as to hearings shall be vested in such examiners[11]; that a Benefits Review Board[12] be established to hear appeals under the Act[13]; and that review of final orders of the BRB may be had by timely

---

Director, O.W.C.P., 484 U.S. 135, 108 S.Ct. 427, 429–30, 98 L.Ed.2d 450 (1987).

**5.** Section 42 of 1969 Act, 83 Stat. 793.

**6.** Section 415 of 1969 Act, as added by Section 7 of Black Lung Act, 86 Stat. 156–57.

**7.** Section 415(a)(4), 86 Stat. 157. The reference is to the Longshoremen's and Harbor Workers Compensation Act of March 4, 1927, 44 Stat. 1421, at 1435. Section 21 of that Act provides for judicial review in District Courts of the decisions of the Deputy Commissioner of the United States Employees' Compensation Commission. 44 Stat. 1425, 1436–37.

**8.** Or "statutory shambles" or "embranglement" as Judge Pell describes it in *Director, Office of Workers' Compensation Programs, United States Department of Labor v. Peabody Coal Co.*, 554 F.2d 310, 313 (7th Cir.1977), or "statutory muddle" as Judge Gibbons calls it. *Krolick Contract-*

ing Corp. v. Benefits Review Board, 558 F.2d 685, 686–87 (3d Cir.1977).

**9.** 83 Stat. 796. (Italics supplied).

**10.** For an example of review (in three courts) under Section 21 before its amendment on October 27, 1972, see *O'Keeffe v. Smith Associates*, 380 U.S. 359, 360–61, 85 S.Ct. 1012, 1013–14, 13 L.Ed.2d 895 (1965).

**11.** Section 19(d) of Longshoremen's Act as amended by Section 14 of the Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972, 86 Stat. 1251, 1261 (Public Law 92–576).

**12.** Hereinafter referred to as BRB.

**13.** Section 21(b) as amended by Sections 15(b)(1) and 15(b)(3) of the October 1972 amendments, 86 Stat. 1261.

petition to the "court of appeals for the circuit in which the injury occurred".[14]

The October 27, 1972 amendments to the Longshoremen's Act were thus made five months after the Black Lung Benefits Act of May 19, 1972 and almost three years after the Delphic enumeration of inapplicable portions (not naming Section 21) of the Longshoremen's Act set forth in § 422(a) of the 1969 Health and Safety Act.

The crucial question then is whether the implied reference in the 1969 Act to the judicial review provision (Section 21) of the Longshoremen's Act "as amended" is to be interpreted as providing for review in District Courts under the language then in force but subsequently repealed, or as providing for review in Courts of Appeals in accordance with then non-existent amendments to Section 21.

If the first-stated view were accepted, it would contemplate the exercise of now non-existent District Court jurisdiction to review determinations by officials now shorn of power to make the determinations appealed from. Surely such "ghosts in the law," [15] to use Justice Holmes's term, do not exemplify the intent of a Congress anxious to expedite the payment of compensation to black lung victims. We agree with and follow the conclusions reached by the other Circuits which have examined the question.

Those cases are based upon thorough consideration and extensive reasoning.

They accept the interpretation that the reference in the 1969 Act to the Longshoremen's Act as the pattern for adjudicating black lung claims includes *future amendments* to the pattern statute.

■ In other words, the 1969 Act's reference to the Longshoremen's Act was a "general" rather than a "specific" reference. It envisaged a systematic structure rather than an isolated statutory fragment, a forest rather than a single tree, a tree rather than a single leaf.[16]

In that connection, Justice Roberts in dealing with the retroactivity *vel non* of a tax statute with respect to transfers not taxable at the time when they were made, quoted from a textbook on statutory construction the canon that

> "Where one statute adopts the particular provisions of another by a specific and descriptive reference to the statute or provisions adopted, the effect is the same as though the statute or provisions adopted had been incorporated bodily into the adopting statute.... Such adoption takes the statute as it exists at the time of adoption and does not include subsequent additions or modifications of the statute so taken *unless it does so by express intent.*" [17]

The question, succinctly stated by Judge Butzner in the Fourth Circuit, was: "do the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act govern the procedures for adjudication of

---

**14.** Section 21(c) as amended by Section 15(c) of the October 1972 amendments, 86 Stat. 1261.

**15.** See *The Western Maid,* 257 U.S. 419, 433, 42 S.Ct. 159, 161, 66 L.Ed. 299 (1922); Dumbauld, "Ghosts in the Law," 14 I.C.C. Practitioners' Journal (April, 1947) 625 (discussing language printed in statute notwithstanding its having been stricken by the Senate during debate).

**16.** A good example of "general" adoption is when the charter of a charitable or educational corporation provides that the corporate powers shall conform to those permitted to be exercised by such a corporation pursuant to Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3), as it may from time to time be amended.

**17.** *Hassett v. Welch,* 303 U.S. 303, 314, 58 S.Ct. 559, 564, 82 L.Ed. 858 (1938) italics supplied.

See also *Kendall v. U.S.,* 12 Pet. 524, 625, 9 L.Ed. 1181 (1838):

> It was not an uncommon course of legislation in the states, at an early day, to adopt, by reference, British statutes; and this has been the course of legislation by congress in many instances where state practice and state process has been adopted. And such adoption has always been considered as referring to the law existing at the time of adoption; and no subsequent legislation has ever been supposed to affect it. And such must necessarily be the effect and operation of such adoption; no other rule would furnish any certainty as to what was the law; and would be adopting prospectively, all changes that might be made in the law. And this has been the light in which the court has viewed such legislation.

black lung claims? The Benefits Review Board said yes, and we affirm." [18]

Judge Butzner based his interpretation upon legislative history. He rejected the argument of counsel who contended:

that only those provisions of the Longshoremen's Act in existence in May, 1972, when the Black Lung Act was enacted, apply to black lung claims. Therefore, they maintain that the October, 1972 Amendments to the Longshoremen's Act were not retroactively incorporated into the previously-enacted Black Lung Act. Though neither of the texts of the acts in question casts any light on this issue, we believe that the legislative history fully supports the conclusion of the Benefits Review Board.[19]

Judge Pell, however, for the Seventh Circuit, the next Court to consider this issue, treated section 422(a) as a *"general"* reference, rather than as an exception to a "specific" reference. *Director, Office of Workers' Compensation Programs, United States Department of Labor v. Peabody Coal Co.,* 554 F.2d 310, 323–26, 329–31 (7th Cir.1977). He held that Congress contemplated adoption of those portions of the Longshoremen's Act which would facilitate and expedite the prompt payment of compensation to black lung sufferers. He concluded that the Court of Appeals had jurisdiction.[20]

Judge Gibbons for the Third Circuit emphasized the policy reasons for ending the procedural quagmire, and adopted the solution reached by the Seventh Circuit. He states (558 F.2d at 686):

The petitioners do not dispute the hearing officer's finding that the claimant is

totally disabled from pneumoconiosis. Rather, we are tendered a number of jurisdictional and procedural issues which result from the statutory muddle Congress created by the cross-reference in the Federal Coal Mine Health and Safety Act of 1969 to the Longshoremen's and Harbor Workers' Compensation Act of 1927, P.L. 803, 69th Cong. (1927), the amendments of the latter by the Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972, P.L. 92–576, 92d Cong.2d Sess. (1972), the amendments of the former by the Black Lung Benefits Act of 1972, *supra,* the further amendment of the former in four successive Department of Labor Appropriation Acts. P.L. 93–192, 87 Stat. 748; P.L. 93–517, 88 Stat. 1636; P.L. 94–206, 90 Stat. 7; P.L. 94–439, 90 Stat. 1421; and the delphic pronouncement of a Joint Resolution, P.L. 94–504, 90 Stat. 2428, signed by the President on October 1, 1976. Taken together, these statutes demonstrate nothing so much as Congressional ignorance of the problems its legislation engendered. In a *tour de force* demonstrating both scholarship and ingenuity, Judge Pell has produced the best effort at reconciliation to date. *Director, Office of Workers' Compensation Programs v. Peabody Coal Company et al.,* 554 F.2d 310 (7th Cir.1977). That opinion addresses each of the issues tendered here, and on each we adopt the solution which the Seventh Circuit reached. We are convinced that we can add nothing to Judge Pell's effort. Moreover, even if we could the desirability of bringing an end to jurisdictional

---

**18.** *Director, Office of Workers' Compensation Programs, United States Department of Labor v. National Mines Corp.,* 554 F.2d 1267, 1269 (4th Cir.1977).

**19.** 554 F.2d at 1272. Such legislative history, in his view, brought the adoption of the Longshoremen's Act by § 422(a) within the "express intent" exception to the *Hassett* rule.

**20.** By limiting the adoption to provisions expediting payment to victims, he avoided the logical conclusion that determinations made by hearing officers who were not qualified ALJs as required [see note 11, *supra*] by Section 19(d)

of the Longshoremen's Act as amended were invalid. 554 F.2d at 341. Judge Butzner reached the same result by holding that Section 422(a) incorporated the Longshoremen's Act's provisions "except as the Secretary shall by regulation otherwise provide." 554 F.2d at 1273–74. See the italicized words of Section 422(a) at note 9 *supra.* Judge Gibbons for the Third Circuit agreed, Congress "apparently aware of the impasse between the Civil Service Commission and the Department of Labor," having meanwhile in Appropriations Acts authorized the appointment of qualified persons, who were not ALJs, for the purpose of hearing black lung cases. 558 F.2d at 690.

and procedural uncertainties which are currently thwarting the implementation of Part C of Title IV suggests strongly that we resolve those uncertainties as he did.

After a lucid and succinct review of the pertinent statutory provisions [21] and of the controversy between the Civil Service Commission and the Department of Labor,[22] he endorsed the Seventh Circuit's reasoning. Whether the Courts of Appeals have jurisdiction of black lung cases, he pointed out, depends on

whether, as the Civil Service Commission contends, the 1969 Black Lung legislation incorporated the review scheme of the Longshoremen's and Harbor Workers' Compensation Act statically, and there has been no subsequent legislative change. If the rule of statutory construction of *Hassett v. Welch* and *Kendall v. United States, supra,* governs, neither the Benefits Review Board nor this Court has jurisdiction.

Judge Pell, to whom the same issue was presented, concluded that the *Hassett-Kendall* rule of construction did not apply, because the 1969 Black Lung legislation, properly construed, was not a specific reference statute but a general one. A general reference statute, he held, brought into play the opposite rule of construction, that dynamic incorporation of the law as it might develop was intended. He therefore concluded that the review scheme of the 1972 amendments to the Longshoremen's and Harbor Workers' Act applied to Part C Title IV Black Lung cases.

Reasonable men could differ over many features of Judge Pell's statutory analysis, which we will not repeat. But we are persuaded that his analysis is the correct one. The Seventh Circuit's solution involved a thorough and imaginative examination of all the available materials. We cannot improve upon it. [558 F.2d at 688]

Unwilling to rely, as Judge Butzner did, on the legislative history [23] of the statutes involved, Judge Gibbons went on to conclude [558 F.2d at 688]:

But as we said of Judge Pell's analysis, it is more important for the circuits to agree on who has jurisdiction over Part C Title IV cases than that we agree on the rationale to support the conclusion. With that in mind, we align ourselves with the Seventh Circuit's reasoning as well as its conclusion and the Fourth Circuit's conclusion, and hold that the Benefits Review Board had jurisdiction, and so do we.

Finally, the Sixth Circuit came to the same conclusion in *Director, O.W.C.P. v. Eastern Coal Corp.,* 561 F.2d 632, 635–39 (6th Cir.1977). Judge Edwards there followed the "express intent" exception to the *Hassett* rule, and also applied the doctrine of *in pari materia* to deduce a general intent or trend of legislative replacement of "outmoded and unsatisfactory methods of review" by an updated procedure for handling compensation cases in areas of Congressional concern. 561 F.2d at 638–39. In conclusion he stated that:

What we deduce from these statutes is that Congress has decided to employ the Longshoremen's Act as the basic proce-

---

**21.** 558 F.2d 686–87. Regarding legislative history he noted that:

*There is no hint in the legislative history of the 1969 Black Lung Act that any other scheme of adjudication and review was intended* [than the existing scheme in Sections 19 and 21 of the Longshoremen's Act as it stood in 1969].

The 1972 amendments to the Longshoremen's and Harbor Workers' Act changed the review scheme by substituting for district court review a Benefits Review Board, and by providing that its decisions were reviewable in the United States Court of Appeals. *Both the text and the Legislative History of the 1972 Amendments are silent as to Black Lung bene-*

*fits* ... Congress also amended the Black Lung legislation in 1972, but the *Black Lung Benefits Act of 1972 does not address the question of review by the Benefits Review Board and the Court of Appeals.* [Italics supplied]

**22.** 558 F.2d 687–88. The Civil Service Commission refused to authorize use of ALJs with review by the BRB and Courts of Appeals in Black Lung cases, insisting that under *Hassett* the scheme of Sections 19 and 21 of the Longshoremen's Act as it stood in 1969 continued in force.

**23.** See notes 19 and 21, *supra.*

dural vehicle for workmen's compensation claims.

■ In view of the reasoning elaborated in the case law summarized above, this Court explicitly aligns itself with the conclusion reached by the Third, Fourth, Sixth, and Seventh Circuits, and accepted *sub silentio* in our own earlier cases [24], that this Court, and the Benefits Review Board, have jurisdiction to review black lung cases.

To the comprehensive and thorough reasoning in those cases we have nothing to add.[25] What has been established may be succinctly summarized by saying that this Court has jurisdiction under 33 U.S.C. § 921(c) as incorporated by 30 U.S.C. § 932(a).

In exercising our jurisdiction in this type of case, the scope of review is limited. As stated by Judge Henley in *Hon v. Director, O.W.C.P.*, 699 F.2d 441, 444 (8th Cir.1983):

> The scope of review of an ALJ's decision is limited. The ALJ's findings of fact may be set aside by the Benefits Review Board only if they are not supported by substantial evidence. 30 U.S.C. § 921; *Parker v. Director*, 590 F.2d 748, 749 (8th Cir.1979). Our role is to assure that the BRB properly adhered

to its standard of review. This requires us to examine the ALJ's factual determinations and the record.

■ That we, or the BRB, might draw different inferences from the evidence of record is immaterial if the fact-finder's conclusions are adequately supported by substantial evidence and not contrary to law. *Parker v. Director, O.W.C.P.*, 590 F.2d 748, 749 (8th Cir.1979).[26]

■ One further preliminary question must now receive our attention. At an earlier stage of the case, Crown Construction Company's insurance carrier filed before the Department of Labor a motion to dismiss Clark's claim on the ground that pursuant to 30 U.S.C. § 931(a) he should have filed his claim with the Arkansas Workmen's Compensation Commission. This motion was denied by order of G. Marvin Bober, Associate Chief Judge of the United States Department of Labor, Office of Administrative Law Judges, dated April 16, 1985, for the reason that the Secretary of Labor has never established a list of States pursuant to 30 U.S.C. § 931(b) and that therefore the requirement of State filing pursuant to 30 U.S.C. § 931(a) was not applicable. This decision is plainly correct.[27]

**24.** See note 2, *supra*.

**25.** Perhaps in enumerating the indicia of Congressional intent to make review by the Courts of Appeals "the basic procedural vehicle" for review of black lung cases, one might add a reference to the literal language of the inclusive general statement in Section 106(a) of the 1969 Act, 83 Stat. 754, providing that: "Any order or decision issued by the Secretary or the Panel *under this Act* ... shall be subject to judicial review by the United States court of appeals for the circuit in which the affected mine is located" (italics supplied). But this argument is doubtless meretricious as the quoted language plainly is meant to refer to proceedings under Section 5(f)(1) of the Act, 83 Stat. 745.

One might also perhaps invoke the principle that the law of evidence develops in accordance with social needs and attitudes rather than being crystallized at the date of the 1789 Judiciary Act [*Rosen v. U.S.*, 245 U.S. 467, 470–71, 38 S.Ct. 148, 149–50, 62 L.Ed. 406 (1918) ], just as determination of what constitutes "cruel and unusual punishment" depends upon "evolving standards of decency." [*Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976) ].

**26.** As there stated:

This Court has jurisdiction pursuant to 33 U.S.C. § 921(c), incorporated by 30 U.S.C. § 925 and 30 U.S.C. § 932 ... This appeal presents the narrow issue of whether the BRB adhered to its statutory standard of review of factual determinations ...the BRB does not have the authority to undertake a de novo review of the evidence in reviewing compensation orders, or to substitute its views for the administrative law judge ... If adequately supported by the evidence and not inconsistent with the law the administrative law judge's determination is conclusive, and it is immaterial that the facts permit the drawing of diverse inferences.

**27.** Letters filed with the Clerk of this Court on August 7, 14, and 15 by counsel for respondent, petitioner, and party in interest, respectively, unanimously establish these points, and supply copies of the order of April 16, 1985, and of 20 C.F.R. 722.152(b). See text at note 5 *supra*. As stated in the letter from counsel for the Department of Labor:

State involvement in the black lung benefits programs has been an unfulfilled wish of

We turn now to the merits of the case.

■ In the light of the deferential standard of review that we are required to apply,[28] and the substantial volume of somewhat conflicting and inconclusive medical evidence in the record, (presenting a typical case for resolution by the trier of fact) we are unable to hold that the ALJ's findings are unsupported by substantial evidence when the record is viewed as a whole. Nor is his decision contrary to law, for the law is clear that if the claimant did not have pneumoconiosis, his claim falls *uno ictu.* It is immaterial and unnecessary to scrutinize the other legal requirements for an award of benefits, such as causation (by employment related to the coal industry) or consequences (disability). And there is substantial evidence to support the ALJ's finding of no pneumoconiosis.

It must be remembered that claimant's own testimony shows that during much of his working time he was not exposed to coal dust.[29] Some of his work around the mine was simply mechanical and having no direct relation to coal. His principal employment was as a truck driver. There was exposure to coal dust only while loading or unloading the truck. His work was mostly outdoors and in the open air.

Claimant argues that the testimony of Dr. Heard is discredited and should be disregarded because his opinion as to the nature and etiology of pneumoconiosis is contrary to the policy embodied in the statute as enacted by Congress.

It is possible to interpret Dr. Heard's testimony in that manner, as a mindset refusing to see black lung disease except after long exposure to coal dust in a confined space.[30]

Claimant is quite right that Congress amended the Mine Safety Act in 1972 to eliminate the limitation of benefits to miners working in an underground mine.[31] Under claimant's interpretation of Dr. Heard's testimony, no worker in a strip mine could ever be awarded black lung benefits. And Congress has ordained the opposite.

But the ALJ might reasonably interpret Dr. Heard's testimony, not as *idée fixe* or medical dogma. The doctor might have meant merely that in most of the cases that had fallen under his observation the victims had indeed worked in a closed-in space (quite often, to be sure, in an underground mine) and that he perceived a factual difference between claimant's situation and the "run of mine" black lung case (if one may use that expression). And he derived from that difference the simple factual (not ideological) conclusion that claimant's exposure to coal dust was so slight that in all likelihood it could not have caused the dreaded disease so typical of miners with long exposure underground.

In any event, the ALJ need not have based his decision on Dr. Heard's testimony at all and probably did not. In fact, it would seem he might properly have relied solely on the testimony of Dr. Stewart and Dr. Nichols.[32] These experts described pneumoconiosis as an obstruction of the airways in the lung. They testified that claimant presented no such obstructions. His abnormal symptoms were referable to other portions of the lungs. His lung dis-

Congress. To date no state has been found to be sufficiently in compliance with the statutory criteria to permit it to assume responsibility for the program. Thus, the Secretary has never established a list of States whose workmen's compensation laws are deemed to provide adequate compensation for victims of coal miners' pneumoconiosis under the standards prescribed by Congress.

28. See quotations from *Hon* and *Parker, supra.*

29. Transcript (of February 27, 1986 hearing) 17–20, 22, 46–47.

30. Letter of February 16, 1983, DX 20 [Director's exhibits will be indicated by DX, Claimant's Exhibits by CX].

31. Section 3(a) of the 1972 Black Lung Amendments, 86 Stat. 153; Section 2(d) of Black Lung Benefits Reform Act of 1977, approved March 1, 1978, 92 Stat. 95.

32. Dr. David R. Nichols, November 14, 1983, p. 7, DX 30; Dr. Nichols, October 11, 1984, pp. 3, 5, CX 1; Dr. Jerry R. Stewart, April 12, 1984, and May 2, 1984, DX 35, pp. 2–3; and May 2, 1984, DX 36.

ease was "restrictive," not "obstructive." Hence his ailment was not pneumoconiosis; therefore his claim was not substantiated and was properly rejected. The decision of the Benefits Review Board, affirming the ALJ's denial of benefits, must therefore be

AFFIRMED.