908 F.2d 393
 CONSOLIDATION COAL COMPANY and State of North Dakota, Petitioners,
v.
Dorthy HAGE (Widow of Gudmund Hage) and Director, Office of
Workers' Compensation Programs U.S. Department of
Labor, Respondents.
 No. 89-1321.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 16, 1990.
Decided July 16, 1990.
 
 David Allen Barnette, Charleston, W.V., for petitioners.
 Rita Roppolo, Washington, D.C., for respondents.
 
 
 1
 Before FAGG and WOLLMAN, Circuit Judges, and DUMBAULD*, Senior District Judge.
 
 
 2
 DUMBAULD, Senior District Judge.
 
 
 3
 Petitioners Consolidation Coal Co. (coal company) and State of North Dakota appeal from a Decision and Order of the Benefits Review Board (BRB) of the Department of Labor, which affirmed the decision and order of the Administrative Law Judge (ALJ) awarding Black Lung benefits under 30 U.S.C. Sec. 901 et seq. to the widow of a now-deceased coal miner who was 66 years old when he died in 1976.[1] We affirm.
 
 
 4
 The growth of Black Lung legislation and the function of this Court in reviewing decisions of the BRB are explained in Clark v. Crown Construction Co., 887 F.2d 149, 155 (8th Cir.1989), where the limited scope of review in such cases is emphasized:
 
 
 5
 In exercising our jurisdiction in this type of case, the scope of review is limited. As stated by Judge Henley in Hon v. Director, O.W.C.P., 699 F.2d 441, 444 (8th Cir.1983):
 
 
 6
 The scope of review of an ALJ's decision is limited. The ALJ's findings of fact may be set aside by the Benefits Review Board only if they are not supported by substantial evidence. 30 U.S.C. Sec. 921; Parker v. Director, 590 F.2d 748, 749 (8th Cir.1979). Our role is to assure that the BRB properly adhered to its standard of review. This requires us to examine the ALJ's factual determinations and the record.
 
 
 7
 That we, or the BRB, might draw different inferences from the evidence of record is immaterial if the factfinder's conclusions are adequately supported by
 
 
 8
 substantial evidence and not contrary to law. Parker v. Director, O.W.C.P., 590 F.2d 748, 749 (8th Cir.1979).
 
 As stated in Parker [590 F.2d at 749]:
 
 9
 This Court has jurisdiction pursuant to 33 U.S.C. Sec. 921(c), incorporated by 30 U.S.C. Sec. 925 and 30 U.S.C. Sec. 932.... This appeal presents the narrow issue of whether the BRB adhered to its statutory standard of review of factual determinations ... the BRB does not have the authority to undertake a de novo review of the evidence in reviewing compensation orders, or to substitute its views for the administrative law judge.... If adequately supported by the evidence and not inconsistent with the law the administrative law judge's determination is conclusive and it is immaterial that the facts permit the drawing of diverse inferences.[2]
 
 
 10
 The specific question before this Court is whether appellant has succeeded in rebutting the statutory presumptions in appellee's favor which arise by virtue of the decedent's coal mine work for a period of time in excess of 25 years. It is not contested that claimants are entitled to invoke these presumptions.
 
 
 11
 In the miner's own claim, he was entitled to the benefit of the "interim presumption" established by 30 U.S.C. Sec. 921(c)(4) on the basis of fifteen years of coal mine work.[3] This provision establishes a rebuttable presumption, but one which can be rebutted only by establishing that the miner "does not, or did not have pneumoconiosis," or that "his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine."
 
 
 12
 In the widow's separate claim, she is entitled to the benefit of the presumption in 30 U.S.C. Sec. 921(c)(5)[4] based upon decedent's 25 years of coal mine work.[5]
 
 
 13
 The cigarette defense[6] is appellant's mainstay in seeking to rebut both presumptions.[7] Appellant argues that the ALJ and BRB "ignored the entirety of the medical evidence."[8] However, bearing in mind the deferential standard of review in this type of litigation,[9] we are satisfied that the ALJ's decision (and the BRB's affirmance thereof) was supported by substantial evidence and based upon a rational exercise of her discretion with respect to evaluation of the weight of the evidence.
 
 
 14
 The standard of sufficient support by substantial evidence is clearly met by reference to the June 6, 1975 report of Dr. Kenneth M. Amschutz, decedent's treating physician. Therein it was stated that decedent had "chronic obstructive lung disease." Dr. Amschutz also stated that this condition was connected with decedent's coal mine employment, and disabled him from any greater activity than walking.[10] [D. 18]
 
 
 15
 It is true, as the ALJ points out, that later[11] the doctor said he was unable to determine the degree to which the anthracosis contributed to the decedent's condition (as compared with the smoking); and that still later[12] he changed his mind on the basis of having read an article by another medical witness in the case at bar, Dr. William K. Morgan, whose thesis was that working in a coal mine causes disabling respiratory impairment only if progressive massive fibrosis (demonstrated by x-ray) is present. The ALJ under these circumstances was warranted in taking the views of Dr. Morgan and the later concurrence of Dr. Amschutz with a grain of salt, and accepting Dr. Amschutz's earlier statement.
 
 
 16
 There is no disagreement with the ALJ's conclusion that decedent suffered from "chronic obstructive lung disease."[13] That condition, we have held (on the basis of medical testimony), constitutes a type of ailment which Congress deems sufficient to entitle a claimant to Black Lung benefits.[14]
 
 
 17
 It must be borne in mind that in giving effect to the conditions and limitations upon the receipt of Black Lung benefits, the judicial task is to discern and interpret the will of Congress as embodied in legislative language (a strictly juridical task) rather than to conform strictly to the dogmatic categories of medical science with respect to the recognition of clinical entities. Hence it is proper to speak of "statutory" (as distinguished from "true" or "clinical") pneumoconiosis. Bishop v. Peabody Coal Co., 690 F.2d 131, 135 (7th Cir.1982); Oliver, supra, 888 F.2d at 1240.
 
 
 18
 The statutory definition is found in 30 U.S.C. Sec. 902(b) where Congress declared that:
 
 
 19
 The term "pneumoconiosis" means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment.[15]
 
 
 20
 In the regulations, 20 CFR 727.202 repeats that formulation, and elaborates it by saying that:
 
 
 21
 This definition includes but is not limited to coal workers' pneumoconiosis, anthracosilicosis, anthracosisanthro-silicosis, massive pulmonary fibrosis, progressive massive fibrosis silicosis, or silicotuberculosis arising out of coal mine employment. For purposes of this definition, a disease "arising out of coal mine employment" includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or aggravated by exposure in coal mine employment. [Italics supplied][16]
 
 
 22
 Accordingly, the ALJ appropriately discounted the testimony of Dr. Morgan, who espoused the dogmatic view that only progressive massive fibrosis was to be regarded as pneumoconiosis entitling a miner to Black Lung benefits.[17] The ALJ likewise properly discounted the views of Dr. Kress because he relied excessively upon the negative x-ray readings[18]; and for the further incidental reason that he advanced for assuming that decedent had not been exposed to coal dust.[19]
 
 
 23
 For the foregoing reasons, the Decision and Order of the ALJ (and of the BRB in affirmance thereof) being in accordance with applicable law and supported by substantial evidence of record, is
 
 AFFIRMED
 
 
 *
 The Honorable Edward Dumbauld, Senior District Judge for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 Before his death decedent filed a claim for Black Lung benefits on January 30, 1974. The widow's separate claim was filed on October 20, 1976. Both claims were decided in favor of the claimants by the ALJ and BRB
 
 
 [2]
 Since in the case at bar the BRB affirmed the ALJ, there is no problem with respect to the particular weight to be given to the ALJ's opportunity to observe the demeanor of witnesses and evaluate the weight of the evidence, though of course we have taken that factor into consideration. Cf. with regard to a case involving a different administrative agency, Schwartz Mfg. Co. v. N.L.R.B., 895 F.2d 415, 416-17 n. 5 (7th Cir.1990)
 
 
 [3]
 It is uncontested that numerous x-rays were read as negative for pneumoconiosis. (But see note 13, infra ). But "other evidence" (i.e. ventilatory studies within the specified values and Dr. Amschutz's June 6, 1975 report) demonstrated "the existence of a totally disabling respiratory or pulmonary impairment" meeting the requirements of 30 U.S.C. Sec. 921(c)(4). [This provision is derived from Sec. 411(c)(4) of the Black Lung Act of Dec. 30, 1969, 83 Stat. 793, as added by the Act of May 19, 1972, 86 Stat. 154.]
 See also 20 CFR 727.203(a)(2) and (4), and 727.203(b)(3) and (4), as to rebuttal.
 
 
 [4]
 This presumption is established by Sec. 411(c)(5) of the Black Lung Act as added by the Act of March 1, 1978, 92 Stat. 96; and may be rebutted only by establishing that "at the time of his ... death such miner was not ... disabled due to pneumoconiosis." See also 20 CFR 727.204
 
 
 [5]
 The coal company contested before the administrative agency the duration of decedent's coal mine work, pointing to periods of lay-off. The ALJ's finding on this purely factual issue (Appellant's brief, 24, 30) is par excellence the type of finding not to be readjudicated on appeal to this Court
 
 
 [6]
 Appellant emphasizes testimony that decedent smoked a pack and a half of cigarettes daily over forty years, until Dr. Amschutz told him to reduce his smoking
 
 
 [7]
 Of course appellant also emphasizes repeatedly the absence of x-ray confirmation of pneumoconiosis. Congress ordained, however, that mere lack of x-ray confirmation shall not defeat a claim; rather, all relevant evidence must be considered. 30 U.S.C. Sec. 923(b); derived from Sec. 413 of Black Lung Act, as amended by Act of March 1, 1972, 86 Stat. 154. See Oliver v. Director, OWCP, 888 F.2d 1239, 1241 (8th Cir.1988). Lack of x-ray confirmation is a factor which may be considered in forming a professional judgment by a physician. U.S. Steel Corp. v. Gray, 588 F.2d 1022, 1027 (5th Cir.1979); Oliver, supra, 888 F.2d at 1243
 
 
 [8]
 Appellant's brief, 20
 
 
 [9]
 See authorities cited in text preceding note 2, supra
 
 
 [10]
 Director's Exhibit 18, Administrative Record entitled Appendix [hereinafter "App."] 18
 
 
 [11]
 December 17, 1976. App. 12
 
 
 [12]
 July 21, 1980. App. 33
 
 
 [13]
 This is the opinion not only of Dr. Amschutz (App. 11, 18, 34), but also of Dr. Morgan (App. 25), and of Dr. George O. Kress (App. 29, 63, 66, 68). Dr. Morgan noted "a small amount of dust pigmentation of the lungs" (App. 25); see note 3, supra
 
 
 [14]
 Our conclusion in Oliver, supra, may be regarded as "negative pregnant," rather than as "obiter" dictum. The claim there was held to have been properly denied because the claimant's disease was not "obstructive" lung disease:
 These experts described pneumoconiosis as an obstruction of the airways in the lung. They testified that claimant presented no such obstructions. His abnormal symptoms were referable to other portions of the lungs. His lung disease was "restrictive," not "obstructive." Hence his ailment was not pneumoconiosis; therefore his claim was not substantiated and was properly rejected. [887 F.2d at 156-57]
 
 
 [15]
 This wording comes from Sec. 402(b) of the Black Lung Act as amended by Sec. 2(b) of the Act of March 1, 1977, 92 Stat. 95
 
 
 [16]
 Appellant argues vigorously but unpersuasively that it was improper for the ALJ to "expand" the "laundry list" of ailments enumerated in 20 CFR 727.202. Appellant's Brief, 13
 
 
 [17]
 App. 40-41. Cf. Clark, supra, 887 F.2d at 156
 
 
 [18]
 See note 7, supra; App. 135-36
 
 
 [19]
 Dr. Kress said mining operations in North Dakota where decedent worked were wet, and hence not dusty like those in Ohio with which Dr. Kress was familiar. App. 140